O'MELVENY & MYERS LLP
Gerald C. Bender, Esq.
Times Square Tower
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Attorneys for Debtor and Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------- x
| | |
|---|---|
| **In re:** : | **Chapter 11** |
| : | |
| **EUSA LIQUIDATION INC.,** : | **Case No. 09-15008 (SMB)** |
| **(f/k/a Escada (USA) Inc.)** : | |
| : | |
| **Debtor.** : | |
| : | |

--------------------------------------------------------------------- x

**APPLICATION FOR ORDER AUTHORIZING
EMPLOYMENT OF TOGUT, SEGAL & SEGAL, LLP AS
SPECIAL CONFLICTS COUNSEL TO THE DEBTOR**

EUSA Liquidation Inc., as debtor and debtor-in-possession (the "Debtor"), by its undersigned attorneys, hereby submits this Application (the "Application") for an order authorizing the employment of Togut, Segal & Segal, LLP (the "Togut Firm") as special conflicts counsel to the Debtor, pursuant to sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"). In support of this Application, the Debtor relies upon the Declaration of Albert Togut (the "Togut Declaration"), which is incorporated herein by reference, and respectfully represents as follows:

**INTRODUCTION**

1. In order to minimize the overall expense of administering the Debtor's bankruptcy case and maximize recoveries for the Debtor's creditors, the Debtor seeks to retain the Togut Firm to (a) investigate and, if appropriate, prosecute certain claims, causes of action and similar rights the Debtor and its estate may have against certain creditors and other parties, (b) pursue objections to various claims and (c) perform such other discrete duties as are assigned by the Debtor's general bankruptcy counsel because of a potential conflict of interest or, alternatively, which can be more efficiently handled by the Togut Firm.

**JURISDICTION AND VENUE**

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b). This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

3. On August 14, 2009 (the "Petition Date"), the Debtor commenced in this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtor is authorized to operate its business and manage its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. No trustee or examiner has been appointed in this chapter 11 case. On September 3, 2009, the United States Trustee for the Southern District of New York appointed the Creditors' Committee. The Creditors' Committee is comprised of HVB, BNY and Basil David Postan.[1]

---

[1] Because the Official Committee of Unsecured Creditors appointed in this chapter 11 case (the "Creditors' Committee") is comprised of Bayerische Hypo-und Veriensbank ("HVB"), as agent under the Senior Credit Facility (as defined below), and The Bank of New York Mellon, N.A. ("BNY"), as indenture trustee for the Senior Notes (as defined below), counsel for the Creditors' Committee is not in a position to defend the estate or to prosecute various actions described herein.

5. On September 15, 2009 the Court authorized the retention of O'Melveny and Myers LLP ("OMM") as counsel to the Debtor *nunc pro tunc* to the Petition Date. Since then, the Court has also authorized the retention of Follick & Bessich as special customs counsel to the Debtor pursuant to Section 327(e) and 330 of the Bankruptcy Code.

6. On October 13, 2009, the Court entered the Order Pursuant to Section 105(a) and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a) and General order M-348 Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals (the "Interim Compensation Order").

7. The Debtor consummated the sale of substantially all of its assets and business to Escada US Subco LLC ("Subco") on January 15, 2010. After the sale, the Debtor's estate holds approximately $14 million dollars in assets for distribution to creditors.

8. The Debtor's exclusivity period has expired and the Debtor is currently working to develop and file a plan of liquidation and related disclosure statement.

**The Parent Guarantees**

9. The Debtor is a wholly owned subsidiary of Escada AG, a stock corporation organized under the laws of Germany (the "Parent"), which filed for insolvency proceedings under the laws of Germany one day prior to the Petition Date. On December 1, 2009, the Parent sold its assets in its German insolvency proceeding to HSBC Trustee (C.I.) Limited as trustees of the Royal II Trust, of 1 Grenville Street, St. Heller, Jersey, JE4 9PF, a subsidiary of the Mittal Family Trusts and an affiliate of Subco.

10. The largest purported claim against the Debtor in this chapter 11 case arises under a guarantee of Parent's payment obligations under EUR 200 million of 7.5% Senior Notes due 2012 (the "Senior Notes") issued by Parent pursuant to an indenture entered into on

March 23, 2005 (the "Indenture") with BNY as indenture trustee (the "Trustee"). Pursuant to the Indenture, the Company and certain other subsidiaries of the Parent jointly and severally, unconditionally and irrevocably guaranteed the full and prompt performance of all of Parent's obligations under the Indenture and the Senior Notes, including the payment of principal, and premium, if any, and interest on the Notes (the "Senior Notes Guarantee"). On December 18, 2009, the Trustee filed a proof of claim asserting that the Debtor owes $293,662,953.83 pursuant to the Senior Notes Guarantee.

11. The Debtor is also a guarantor under the Parent's loan agreement dated September 22, 2008 (the "Senior Credit Facility") with HVB (now known as UniCredit Bank AG) (the "Senior Credit Facility Guarantee" and together with the Senior Notes Guarantee, the "Guarantees"). The Senior Credit Facility provided for two facilities, a revolving credit facility in the amount of approximately EUR 45 million and a bank guarantee facility in the amount of approximately EUR 15 million with a stated maturity date of December 30, 2009. The Senior Credit Facility refinanced the Parent's approximately EUR 90 million senior unsecured syndicated loan facility with a banking syndicate led by Deutsche Bank AG, dated March 2, 2005, which was also guaranteed by the Debtor. On January 29, 2010, HVB filed an amended proof of claim[2] asserting that the Debtor owes $5,435,180.75 plus interest, fees and other costs pursuant to the Senior Credit Facility Guarantee.

12. The Debtor believes that the issue of whether or not the Debtor received reasonably equivalent value in exchange for its guarantee of the Senior Notes in 2005 or its guarantee of the Senior Credit Facility in 2008 and was, or was rendered, insolvent as a result of the Guarantees should be investigated.

---

[2] HVB's original proof of claim was filed on December 22, 2009.

### The Sutton Indemnity

13. Prior to the Petition Date, on or about September 15, 2008, the Debtor entered into a sub-sublease for premises located at 560 Broadway, New York, New York (the "Lease"). The Lease was rejected effective as of October 31, 2009, pursuant to an order of this Court, dated November 5, 2009. The landlord/tenant/subtenant/sub-subtenant relationships that existed and gave rise to the Debtor's sub-subtenant interest in the premises were as follows:

    (a) 560 Associates, LLC (prime landlord)

    (b) Ann Taylor Retail, Inc. ("Ann Taylor") (prime tenant and sublessors to 560 Broadway LLC)

    (c) 560 Broadway LLC ("560 Broadway") (subtenant of Ann Taylor and sub-sublessor to Debtor)

    (d) Debtor (sub-subtenant)

14. In connection with the Lease, the Debtor provided an irrevocable letter of credit in the initial amount of $3,927,461.88 (the "Letter of Credit"), issued by HVB in favor of Ann Taylor. The Letter of Credit provided that in the event 560 Broadway did not pay rent to Ann Taylor, Ann Taylor could demand payment of the past-due rent amount under the Letter of Credit. Pursuant to the terms of a reimbursement agreement (the "Reimbursement Agreement"), dated October 6, 2008, by and between the Debtor and HVB, the Debtor is obligated, *inter alia*, to reimburse HVB for any and all amounts paid by HVB pursuant to the Letter of Credit. As of January 29, 2010, the Letter of Credit had been fully drawn down and paid. Accordingly, HVB filed a proof of claim against the Debtor in the amount of $3,927,461.88 plus interest, fees, expenses and other costs pursuant to the Reimbursement Agreement (the "HVB Claim").

15. In connection with the above transactions, Jeff Sutton (the "Indemnitor"), as the individual principal of 560 Broadway and the prime landlord of the leased premises, agreed to indemnify, defend and hold harmless the Debtor from any and all claims and losses

5

incurred, *inter alia*, on account of any act, omission or negligence of 560 Broadway in connection with the sublease with Ann Taylor (the "Indemnity").  Thus, the Debtor intends to investigate and, if possible, seek indemnification from the Indemnitor for the HVB claim.

**RELIEF REQUESTED**

16. The Debtor desires to employ and retain the law firm of the Togut Firm as special conflicts counsel, pursuant to sections 327(a) and 330 of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016, and seeks an order, substantially in form attached hereto as Exhibit A, approving the retention of the Togut Firm.  Pursuant to section 327(a) of the Bankruptcy Code, the Debtor requests that the Court approve the retention of the Togut Firm under a general retainer, as its attorneys, to perform services that will be necessary during the chapter 11 case in accordance with the Togut Firm's normal hourly rates and policies in effect when the Togut Firm renders the services or incurs the expenses.

**BASIS FOR RELIEF**

17. By this Application, the Debtor seeks to retain the Togut Firm to (a) investigate and, if appropriate, pursue the causes of action against the Trustee, the lenders under the Senior Credit Facility and the Indemnitor, (b) pursue objections to various claims and (c) perform such other discrete duties as are assigned by OMM because of a potential conflict of interest or, alternatively, which can be more efficiently handled by the Togut Firm.  This will minimize and reduce the overall expenses of administering this case.  If such causes of action are brought and are successful, they could possibly reduce the claims pool and benefit the Debtor's estate by over $300 million and increase recoveries to the Debtor and its creditors.  The Debtor respectfully submits that it is necessary and appropriate to employ and retain the Togut Firm to provide, among other things, the following services:

(a) assist the Debtor in the investigation and analysis of certain causes of action and, if appropriate, prosecute such causes of action;

(b) investigate and prosecute any other claims objections that the Debtor determines could be best brought by the Togut Firm; and

(c) perform such other legal services as may be required or are otherwise deemed to be in the interests of the Debtor in accordance with the Debtor's powers and duties as set forth in the Bankruptcy Code, the Bankruptcy Rules or other applicable law.

18. The Debtor believes that the Togut Firm possesses extensive knowledge and expertise in the areas of law relevant to the causes of action to be analyzed, and that the Togut Firm is well-qualified to represent the Debtor as special conflicts counsel in this chapter 11 case. In selecting special conflicts counsel, the Debtor sought attorneys with considerable experience in complex commercial litigation. The Togut Firm has such experience, as the Togut Firm has acted in this capacity in complex cases such as: *In re Old Carco LLC (f/k/a Chrysler LLC), et al.*, Case No. 09-50002 (S.D.N.Y.); *In re Motors Liquidation Company (f/k/a General Motors Corp.), et al.*, Case No. 09-50026 (S.D.N.Y.); *In re Enron Corp., et al.*, Case No. 01-16034 (S.D.N.Y.); *In re Collins & Aikman Corp., et al*, Case No. 05-55927 (E.D.MI.); *In re Delphi Corp.*, Case No. 05-44481 (S.D.N.Y.); *In re Ames Department Stores*, Case No. 01-42217 (S.D.N.Y); *In re Refco, LLC,* Case No. 06-60134 (S.D.N.Y.); and *In re Charter Communications, Inc., et al.*, Case No. 09-11435 (S.D.N.Y.).

19. The retention of the Togut Firm as special conflicts and litigation counsel is necessary for the Debtor to complete an efficient liquidation of the Debtor's estate and to assist the Debtor in maximizing the value of the Debtor's estate for all creditors. Furthermore, the Debtor believes that the Togut Firm is ideally positioned to advise the Debtor on the causes of action to be analyzed and to bring such actions, if appropriate, and that the Togut Firm's

retention is in the best interest of the Debtor's estate and creditors. In support of this Application, the Debtor is concurrently filing the Togut Declaration.

## No Duplication of Services

20. By having the Togut Firm focus on investigating and prosecuting the causes of action and objecting to claims where appropriate as special conflicts counsel, main restructuring counsel in this chapter 11 case will be able to better focus on the Debtor's chapter 11 case and proceed to confirmation of a plan of liquidation. The Togut Firm will not serve as restructuring counsel to the Debtor, and the Debtor believes, and will require, that the services provided by the Togut Firm will be complementary rather than duplicative of the services to be performed by OMM.

## The Togut Firm's Lack of Adverse Interests

21. Based solely on the Togut Declaration, and except as provided in the same, the Togut Firm does not: (a) represent or hold any interest adverse to the Debtor or its estate with respect to the matters for which the Togut Firm is to be engaged; or (b) have any connection with the Debtor, any creditors or other parties in interest, their respective attorneys and accountants, or the United States Trustee for the Southern District of New York or any person employed by the Office of such United States Trustee.

22. The Togut Firm has informed the Debtor that it may have provided and may continue to provide legal advice and/or have other relationships with parties other than the Debtor. The Togut Firm has informed the Debtor that it is not presently representing any party adverse to the Debtor in connection with this proposed retention. Given its diverse practice and client base, the Togut Firm may represent clients who are or become creditors of the Debtor in matters unrelated to the proposed retention.

23. The Togut Firm is currently counsel to Macy's, Inc. ("Macy's") as one of the members of the Official Committee of Unsecured Creditors in the chapter 11 cases of General Growth Properties, Inc., *et al.*, Case No. 09-11977 in this Court before Bankruptcy Judge Allan Gropper, which is separate and discreet from this case. The Debtor, before substantially all of its assets were sold, had previously sold a line of fragrances through Macy's; since the sale closed, that relationship has terminated. The Togut Firm does not represent Macy's in any other matter and Macy's has given its written consent to the Togut Firm's retention by the Debtor. OMM, lead counsel for the Debtor, will handle any matters concerning Macy's and the Debtor.

## SCOPE AND TERMS OF ENGAGEMENT

24. Subject to Court approval, the Togut Firm will charge the Debtor for its professional services as follows:

> (d) The Togut Firm will charge its standard hourly rates for the duration of this engagement, which are presently as follows:
>
> | | |
> |---|---|
> | Partners | $800 to $935 |
> | Counsel and Associates | $275 to $720 |
> | Paraprofessionals and Law Clerks | $155 to $285 |
>
> (e) To reflect economic and other conditions, the Togut Firm revises its regular hourly rates annually in January, and requests that, effective as of the date of such revision, the aforementioned rates be revised to the regular hourly rates that will be in effect at that time. If at any time during the pendency of the chapter 11 case the Togut Firm increases the rates for its services with respect to the Debtor, the Togut Firm will file a supplemental declaration with the Court describing such increases and provide notice of such to the United States Trustee.
>
> (f) The Togut Firm did not receive a retainer in connection with this proposed retention.
>
> (g) In addition to the compensation for services rendered, the Togut Firm shall be reimbursed for all reasonable out-of-pocket expenses

incurred relating directly to work performed for the Debtor. Examples of such expenses include court reporter and other court fees, recording fees, on-line or computerized legal research, facsimile charges, photocopying charges, witness fees, document retrieval charges, messenger and courier services, transcription costs, postage, printing, travel, lodging, meals, parking, equipment and vehicle rental, long distance telephone, investigative searches, vendor charges, mail charges, and other charges customarily invoiced by law firms. The Togut Firm charges only the amount actually incurred by the Togut Firm in connection with such items.

(h) The Togut Firm will charge the Debtor for these expenses in a manner and at rates consistent with charges made generally to its other clients, subject to this Court's approval of such expenses.

(i) The Togut Firm may contract with outside parties (including experts) for services in connection with its representation of the Debtor. Regardless of whether the fees or expenses of such outside party are paid by the Togut Firm or directly by the Debtor, invoices will be submitted along with the Togut Firm's applications for compensation and payment of such remains subject to review pursuant to section 330 of the Bankruptcy Code.

(j) To ensure compliance with all applicable deadlines and exigencies in this chapter 11 case, the Togut Firm may, from time to time, utilize the services of overtime administrative or secretarial staff and will seek reimbursement for same. The Togut Firm does not charge for secretarial expenses incurred during the normal working day.

(k) The Togut Firm will submit monthly fee statements and will seek to be paid in accordance with the Interim Compensation Order.

(l) The Togut Firm will seek compensation of its fees and expenses on an interim and final basis in accordance with the applicable provisions of the Bankruptcy Code, the Local Rules, the Interim Compensation Order and other applicable orders of the Court. Subject to the allowance of such fees and expenses by the Court, the Debtor shall be jointly and severally liable for the payment of all fees earned and expenses incurred by the Togut Firm in the course of its employment in this case.

(m) The Togut Firm's professionals and paraprofessionals will keep track of their billings in six minute (.1 hour) increments with time charges allocated consistent with the categories set forth by the Office of the U.S. Trustee.

25. The Togut Firm intends to charge costs and expenses to the Debtor in accordance and consistent with the Local Rules and applicable guidelines promulgated by the United States Trustee (the "UST Guidelines"). The Togut Firm will apply to this Court for allowance of compensation for professional services rendered and reimbursement of costs and expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the UST Guidelines and such other procedures as may be fixed by order of this Court.

26. The Togut Firm has neither shared nor agreed to share with any other person compensation received or to be received in this case, other than as permitted by the Bankruptcy Code.

## Supporting Authority

27. Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

28. Moreover, Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

29. The Togut Firm's services in connection with investigating and prosecuting the causes of action will play a key role in ensuring the maximum possible recovery for creditors, and the Debtor believes such services are necessary in this chapter 11 case. Further, the Togut Firm has substantial experience in litigating matters similar to the causes of action. Additionally, and as further described above, based on the Togut Declaration, the Togut Firm does not represent or hold any interest adverse to the Debtor or to its estate with respect to the matters on which the Togut Firm is to be employed. Therefore, and for all the reasons stated above, the Debtor respectfully requests the Court authorize the Togut Firm's retention pursuant to sections 327(a) and 330 of the Bankruptcy Code.

## **NO PRIOR REQUEST**

30. No previous application for the relief requested herein has been made by the Debtor to this or any other court.

## **NOTICE**

31. The Debtor has served notice of this Application on (a) the Office of the United States Trustee for the Southern District of New York; (b) the United States Attorney for the Southern District of New York; (c) counsel to the Creditors' Committee; and (d) all parties who have timely filed requests for notice under Rule 2002. The Debtor submits that no other or further notice need be provided.

WHEREFORE, the Debtor respectfully requests that the Court enter an order substantially in the form attached hereto as <u>Exhibit A</u> granting the relief requested herein and awarding such other and further relief that the Court deems just and proper.

Dated: March 16, 2010
   New York, New York

Respectfully submitted,

/s/ Gerald C. Bender
O'MELVENY & MYERS LLP
Gerald C. Bender, Esq.
Times Square Tower
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Attorneys For Debtor and Debtor-in-Possession

**EXHIBIT A**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
In re:                                      : Chapter 11
                                            :
EUSA LIQUIDATION INC.,                      : Case No. 09-15008 (SMB)
(f/k/a Escada (USA) Inc.)                   :
                                            :
                Debtor.                     :
                                            :
---------------------------------------------------------------- X

# ORDER AUTHORIZING EMPLOYMENT OF
# TOGUT, SEGAL & SEGAL, LLP AS SPECIAL CONFLICTS
# AND LITIGATION COUNSEL TO THE DEBTOR

Upon the application, dated March 16, 2010 (the "Application"),[1] of EUSA Liquidation Inc., as debtor and debtor-in-possession (the "Debtor") for the entry of an order authorizing the Debtor to employ and retain Togut, Segal & Segal, LLP (the "Togut Firm") as special conflicts counsel in this chapter 11 case, pursuant to sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"); all as more fully described in the Application; and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided to (a) the Office of the United States Trustee for the Southern District of New York; (b) the United States Attorney for the Southern District of New York; (c) counsel to the Creditors' Committee; and (d) all parties who

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Application.

have timely filed requests for notice under Rule 2002; and it appearing that no other or further notice need be provided; and the Court having reviewed the Application, the Declaration of Albert Togut, the senior member of the Togut Firm (the "<u>Togut Declaration</u>"); and the Court being satisfied based on the representations made in the Togut Declaration that the Togut Firm does not represent or hold any interest adverse to the Debtor or the Debtor's estate with respect to the matters on which the Togut Firm is to be employed as required by section 327(a) of the Bankruptcy Code, Bankruptcy Rule 2014 and Local Rule 2014-1; and a hearing having been held to consider the relief requested in the Application (the "<u>Hearing</u>"); and the Court having found and determined that the relief sought in the Application is in the best interests of the Debtor, its estate and creditors; and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Application is granted as set forth herein; and it is further

ORDERED that the Debtor is authorized to employ and retain the Togut Firm as its special conflicts and litigation counsel in accordance with the terms and conditions set forth in the Application; and it is further

ORDERED that the Togut Firm is authorized to render professional services to the Debtor as described in the Application, and to perform other discrete duties as generally described in the Application and the Togut Declaration; and it is further

ORDERED that the Togut Firm shall apply for interim and final compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtor's chapter 11 case in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the guidelines established by the Office of the

United States Trustee for the Southern District of New York, and any other applicable procedures and orders of the Court; and it is further

ORDERED that the Togut Firm is subject to the Order Pursuant to Section 105(a) and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a) and General order M-348 Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals, entered on October 13, 2009; and it is further

ORDERED that notwithstanding the possible applicability of Bankruptcy Rule 7062 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that if at any time during the pendency of the chapter 11 case the Togut Firm increases the rates for its services with respect to the Debtor, the Togut Firm will file a supplemental declaration with the Court describing such increases and provide notice of such to the United States Trustee; and it is further

ORDERED that to the extent of any inconsistency amongst this Order, the Application and the Togut Declaration, this Order shall govern; and it is further

ORDERED that the Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this order in accordance with the Application; and it is further

ORDERED that the Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this order.

Dated: _____, 2010
     New York, New York

                                                      _____
                                                      THE HONORABLE STUART M. BERNSTEIN
                                                      UNITED STATES BANKRUPTCY JUDGE