**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**

O'MELVENY & MYERS LLP
Gerald C. Bender, Esq.
Times Square Tower
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

Attorney for Debtor and Debtor-in-Possession

OTTERBOURG, STEINDLER,
HOUSTON & ROSEN, P.C.
William M. Silverman, Esq.
Scott L. Hazan, Esq.
Melanie L. Cyganowski, Esq.
230 Park Avenue
New York, NY 10169
T: (212) 661-9100
F: (212) 682-6104

Counsel to the Official Committee of
Unsecured Creditors

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **EUSA LIQUIDATION INC.,** | : | **Case No. 09-15008 (SMB)** |
| **(f/k/a Escada (USA) Inc.)** | : | |
| | : | |
| **Debtor.** | : | |
| | : | |

------------------------------------------------------------------ x

**DISCLOSURE STATEMENT WITH RESPECT TO JOINT PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE BY THE DEBTOR AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Dated: March 26, 2010
      New York, New York

# NOTICE

THE DEBTOR AND THE COMMITTEE (THE "<u>PLAN PROPONENTS</u>") BELIEVE THAT THE PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE DATED AS OF MARCH 24, 2010 (THE "<u>PLAN</u>") WILL MAXIMIZE THE RECOVERY FOR ITS CREDITORS AND ALL PARTIES IN INTEREST, ENABLE THE DEBTOR TO PROMPTLY LIQUIDATE AND ACCOMPLISH THE OBJECTIVES OF CHAPTER 11.  THE PLAN PROPONENTS BELIEVE THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR AND ITS CREDITORS, AND THEREFORE URGE CREDITORS TO VOTE TO ACCEPT THE PLAN.

THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS _____ P.M., PREVAILING EASTERN TIME, ON [MAY ____, 2010], UNLESS EXTENDED BY THE PLAN PROPONENTS (THE "<u>VOTING DEADLINE</u>").  TO BE COUNTED, BALLOTS MUST BE RECEIVED BY COUNSEL FOR THE DEBTOR ON OR BEFORE THE VOTING DEADLINE.

THE CONFIRMATION AND EFFECTIVENESS OF THE PLAN ARE SUBJECT TO MATERIAL CONDITIONS PRECEDENT.  THERE IS NO ASSURANCE THAT THESE CONDITIONS WILL BE SATISFIED OR WAIVED.

THIS DISCLOSURE STATEMENT, THE PLAN (WHICH IS ANNEXED HERETO AS <u>EXHIBIT A</u>), THE OTHER EXHIBITS ANNEXED HERETO, THE ACCOMPANYING BALLOTS AND THE RELATED MATERIALS DELIVERED TOGETHER HEREWITH ARE BEING FURNISHED BY THE PLAN PROPONENTS TO RECORD HOLDERS OF IMPAIRED GENERAL UNSECURED CLAIMS KNOWN TO THE DEBTOR, IN CONNECTION WITH THE SOLICITATION BY THE PLAN PROPONENTS OF VOTES TO ACCEPT THE PLAN AS DESCRIBED HEREIN.

HOLDERS OF CLAIMS AGAINST THE DEBTOR ARE ENCOURAGED TO READ AND CAREFULLY CONSIDER THE MATTERS DESCRIBED IN THIS DISCLOSURE STATEMENT.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR (INCLUDING, WITHOUT LIMITATION, THOSE HOLDERS OF CLAIMS WHO DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN OR WHO ARE NOT ENTITLED TO VOTE ON THE PLAN) WILL BE BOUND BY THE TERMS OF THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

THIS DISCLOSURE STATEMENT HAS NOT BEEN FILED WITH OR REVIEWED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "<u>SEC</u>") UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "<u>SECURITIES ACT</u>"), OR WITH ANY SECURITIES REGULATORY AUTHORITY OF ANY STATE UNDER ANY STATE SECURITIES OR "BLUE SKY" LAWS.  THE PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SEC OR ANY STATE SECURITIES COMMISSION, AND

NEITHER THE SEC NOR ANY STATE SECURITIES COMMISSION HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE. THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY STATE OR OTHER JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN, OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING SECURITIES OF THE DEBTOR SHOULD NOT RELY UPON THIS DISCLOSURE STATEMENT FOR SUCH PURPOSES AND SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE BY THE PLAN PROPONENTS AS OF THE DATE HEREOF, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT, UNDER ANY CIRCUMSTANCES, CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME SUBSEQUENT TO THE DATE HEREOF.

NO PERSON HAS BEEN AUTHORIZED BY THE DEBTOR IN CONNECTION WITH THE PLAN OR THE SOLICITATION TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED HERETO OR INCORPORATED BY REFERENCE OR REFERRED TO HEREIN, AND, IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MAY NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE PLAN PROPONENTS.

FOR THE CONVENIENCE OF HOLDERS OF CLAIMS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN. IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN ARE CONTROLLING. THE SUMMARIES OF THE PLAN IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE COMPLETE AND ARE SUBJECT TO, AND ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO, THE FULL TEXT OF THE PLAN. ALL HOLDERS OF CLAIMS AND HOLDERS OF INTERESTS ARE ENCOURAGED TO REVIEW THE FULL TEXT OF THE PLAN, AND TO READ CAREFULLY THIS ENTIRE DISCLOSURE STATEMENT, INCLUDING ALL EXHIBITS HERETO.

THIS DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN, AND NOTHING STATED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PERSON, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE PLAN PROPONENTS OR ANY OTHER PERSON, OR

BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON THE DEBTOR OR HOLDERS OF CLAIMS OR INTERESTS.

HOLDERS OF CLAIMS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. EACH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS WITH RESPECT TO ANY SUCH MATTERS CONCERNING THIS DISCLOSURE STATEMENT, THE SOLICITATION OF VOTES TO ACCEPT THE PLAN, THE PLAN AND THE TRANSACTIONS CONTEMPLATED HEREBY AND THEREBY.

IF THE DEBTOR RECEIVES PROPERLY COMPLETED BALLOTS INDICATING ACCEPTANCE OF THE PLAN IN SUFFICIENT NUMBER AND AMOUNT TO MEET THE VOTING REQUIREMENTS PRESCRIBED BY SECTION 1126 OF THE BANKRUPTCY CODE, THE PLAN PROPONENTS INTEND TO SEEK, AS PROMPTLY THEREAFTER AS PRACTICABLE, CONFIRMATION OF THE PLAN. CONSUMMATION OF THE PLAN IS EXPECTED TO OCCUR SHORTLY FOLLOWING THE BANKRUPTCY COURT'S ENTRY OF AN ORDER CONFIRMING THE PLAN (THE "CONFIRMATION ORDER").

# TABLE OF CONTENTS

Page

ARTICLE I ................................................................................................................. 1

DEFINED TERMS AND RULES OF INTERPRETATION .................................................. 1

    A.    Defined Terms ...................................................................................... 1

    B.    Rules of Interpretation and Computation of Time ......................................... 1

ARTICLE II ................................................................................................................ 2

INTRODUCTION ........................................................................................................ 2

    A.    General Background ................................................................................ 2

    B.    The Solicitation ..................................................................................... 3

    C.    The Confirmation Hearing ....................................................................... 3

    D.    Voting; Holders of Claims Entitled to Vote ................................................ 3

    E.    Important Matters ................................................................................... 5

ARTICLE III ............................................................................................................... 5

SUMMARY OF PLAN AND CLASSIFICATION AND .................................................... 5

TREATMENT OF CLAIMS AND INTERESTS THEREUNDER ....................................... 5

ARTICLE IV ............................................................................................................... 9

BUSINESS DESCRIPTION AND REASONS FOR CHAPTER 11 ..................................... 9

    A.    The Debtor's Business ............................................................................ 9

        1.    Description of Debtor's Business ..................................................... 9

        2.    Corporate History and Structure ...................................................... 9

    B.    Management of the Debtor ...................................................................... 10

    C.    Summary of Prepetition Indebtedness ....................................................... 11

        1.    Description of Principal Indebtedness ............................................... 11

    D.    Events Leading to the Commencement of the Chapter 11 Case ................... 12

        1.    Pre-Bankruptcy Restructuring Efforts ............................................. 13

    E.    The Chapter 11 Case ............................................................................. 14

        1.    The Chapter 11 Filing .................................................................. 14

        2.    Professionals Retained by Debtor .................................................... 14

        3.    Appointment of Creditors' Committee and its Professionals ........... 15

| | 4. | Key First Day Motions | 15 |
|---|---|---|---|
| | 5. | Sale, Rejection and Other Disposition of the Debtor's Assets | 16 |
| | 6. | The Debtor's Schedules and Bar Dates | 16 |
| | 7. | Administrative Expenses | 17 |

ARTICLE V ................................................................................................................ 17

THE DEBTOR'S CHAPTER 11 PLAN ..................................................................... 17

| A. | | Classification and Treatment of Claims and Interests | 17 |
|---|---|---|---|
| | 1. | Classification | 18 |
| B. | | Treatment of Claims and Interests | 19 |
| | 1. | Allowed Priority Non-Tax Claims (Class 1) | 20 |
| | 2. | Allowed Miscellaneous Secured Claims (Class 2) | 20 |
| | 3. | Allowed Unsecured Claims (Class 3) | 21 |
| | 4. | Interests (Class 4) | 21 |
| C. | | Implementation of Plan; Establishment of Liquidating Trust | 21 |
| | 1. | Establishment of the Liquidating Trust | 21 |
| | 2. | Appointment of the Liquidating Trustee | 23 |
| | 3. | Distributions on Account of Beneficial Interests | 23 |
| | 4. | Establishment of Accounts and Reserves | 23 |
| | a) | Termination of the Disputed Claims Reserves | 24 |
| | 5. | Distributions on Account of Disputed Claims | 24 |
| | 6. | No Recourse | 24 |
| | 7. | Disputed Payments or Distributions | 24 |
| | 8. | Investment of Disputed Claims Reserves | 25 |
| 9. | | Post-Effective Date Costs | 25 |
| D. | | Provisions Governing Distributions Under the Plan | 25 |
| | 1. | The Initial Distribution | 25 |
| | 2. | Timing of Subsequent Distributions | 26 |
| | a) | Timing of Final Distribution | 26 |
| | 3. | Requirements for Allowance of Claims | 26 |
| | 4. | Minimum Distribution | 26 |
| | 5. | Undeliverable Distributions | 26 |
| | 6. | Setoff | 27 |
| | 7. | No Postpetition Interest on Claims | 27 |

8.      Distributions Paid to Holders of Record ............................................ 27

9.      Release of Reserve Funds ................................................................. 27

10.     Failure to Negotiate Checks .............................................................. 28

11.     Limitation on Distribution Rights ...................................................... 28

E.      Implementation and Means of Consummating the Plan ............................. 28

1.      Limited Survival and Ultimate Dissolution of Corporate
        Entities ............................................................................................. 28

2.      Governance of Trust Assets .............................................................. 29

3.      Dissolution of the Committee ............................................................ 29

4.      Cancellation of Notes, Instruments, Debentures and Interests ......... 29

5.      Closing of the Bankruptcy Case ....................................................... 30

F.      Other Plan Provisions .................................................................................. 30

1.      Executory Contracts ......................................................................... 30

2.      Asset Purchase Agreement ............................................................... 30

3.      Employment Contract with Chris Marques ...................................... 31

4.      Insurance Contracts .......................................................................... 31

All insurance contracts of the Debtor, to the extent transferable, have
        been transferred to Purchaser at or around the time of closing .......... 31

5.      Office Equipment Lease ................................................................... 31

6.      Conditions Precedent to Confirmation............................................. 31

7.      Conditions Precedent to Consummation........................................... 32

8.      Settlement and Compromise of Estate Actions ................................ 32

G.      Effects of Plan Confirmation ...................................................................... 32

1.      Satisfaction of Claims ...................................................................... 32

2.      Binding Effect of Plan ...................................................................... 33

3.      Injunction .......................................................................................... 33

4.      Exculpation and Limitation of Liability ........................................... 34

5.      Term of Injunctions and Stays ......................................................... 34

6.      Release of Liens ................................................................................ 34

7.      Preservation of Estate Actions ......................................................... 35

H.      Retention of Jurisdiction .............................................................................. 35

ARTICLE VI ................................................................................................................. 37

CONFIRMATION AND CONSUMMATION PROCEDURE ........................................... 37

A. Confirmation Hearing ....................................................................... 37

B. Requirements of Section 1129(a) of Bankruptcy Code ............................... 38

    1. Best Interests Test ...................................................................... 39

    2. Feasibility ................................................................................. 40

    3. Acceptance by Impaired Classes ...................................................... 40

    4. Confirmation Without Acceptance by All Impaired Classes ............... 41

C. Classification of Claims and Interests ...................................................... 42

D. Consummation ................................................................................... 42

ARTICLE VII .................................................................................................... 42

ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE
PLAN .............................................................................................................. 42

A. Liquidation Under Chapter 7 ................................................................ 42

B. Alternative Plan(s) of Liquidation ......................................................... 43

C. Dismissal of the Debtor's Chapter 11 Case ............................................. 43

ARTICLE VIII ................................................................................................... 43

SUMMARY OF VOTING PROCEDURES ............................................................. 43

ARTICLE IX ..................................................................................................... 44

CERTAIN FACTORS TO BE CONSIDERED ........................................................ 44

A. Certain Bankruptcy Considerations ....................................................... 44

    1. General ...................................................................................... 44

    2. Failure to Receive Requisite Acceptances ...................................... 44

    3. Failure to Confirm the Plan .......................................................... 44

    4. Risk of Non-Occurrence of the Effective Date ............................... 44

    5. Debtor could Withdraw the Plan ................................................... 45

    6. Conversion into a Chapter 7 Case .................................................. 45

B. Risk Factors ...................................................................................... 45

    1. Allowed Claims May Exceed Estimates ......................................... 45

    2. Plan May Not Be Accepted or Confirmed ...................................... 45

ARTICLE X ...................................................................................................... 45

TAX IMPLICATIONS ........................................................................................ 45

CONCLUSION AND RECOMMENDATION ........................................................ 46

DISCLOSURE STATEMENT EXHIBITS

Exhibit A:     Joint Plan of Liquidation Pursuant to Chapter 11 of the United States Bankruptcy Code, dated as of March 26, 2010

Exhibit B:     Debtor's Liquidation Analysis (To Be Filed)

Exhibit C:     Liquidating Trust Agreement (To Be Filed)

## ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

**A.     Defined Terms**

Capitalized terms used in this Disclosure Statement but not otherwise defined shall have the meanings ascribed to them in the Plan, the Bankruptcy Code or the Bankruptcy Rules, as applicable.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**B.     Rules of Interpretation and Computation of Time**

For purposes of this Disclosure Statement, unless otherwise provided herein:

1.     Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, includes both the singular and the plural;

2.     Unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions;

3.     Any reference in the Plan to an existing document or schedule Filed or to be Filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to the Plan;

4.     Any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns;

5.     The words "herein," "hereunder" and "hereto" refer to this Disclosure Statement in its entirety rather than to a particular provision of this Disclosure Statement;

6.     Captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Disclosure Statement or the Plan;

7.     Subject to the provisions of any contract, certificate of incorporation, by-laws, instrument, release or other agreement or documents entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with federal law, including the Bankruptcy Code and the Bankruptcy Rules;

8. The rules of construction set forth in section 102 of the Bankruptcy Code will apply to the Plan; and

9. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## ARTICLE II
## INTRODUCTION

### A. General Background

The Plan Proponents hereby submit this disclosure statement (the "Disclosure Statement") pursuant to section 1125 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") in connection with the solicitation of acceptances (the "Solicitation") of their Plan. A copy of the Plan, which was Filed with the Bankruptcy Court on March 24, 2010, is annexed hereto as Exhibit A and made a part hereof. This Disclosure Statement should be read in conjunction with the Plan.

The purpose of this Disclosure Statement is to provide sufficient information to enable the Creditors of the Debtor entitled to vote on the Plan to make an informed decision on whether to accept or reject the Plan. The Solicitation is being conducted at this time to obtain sufficient acceptances to enable the Plan to be confirmed by the Bankruptcy Court pursuant to the provisions of the Bankruptcy Code.

Annexed hereto as exhibits are copies of the following documents (the "Exhibits"):

- Plan (Exhibit A)

- Debtor's Liquidation Analysis (Exhibit B)

- Liquidating Trust Agreement (Exhibit C)

Additional copies of this Disclosure Statement (including the Exhibits hereto) are available upon request made to the office of the Debtor's counsel, at O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, New York 10036, Attention: Gerald C. Bender, Esq., (212) 326-2000 (phone) or (212) 326-2061 (facsimile).

In addition, a Ballot for voting to accept or reject the Plan is enclosed with this Disclosure Statement for the Holders of Claims that are entitled to vote to accept or reject the Plan. If you are a Holder of a Claim entitled to vote on the Plan and did not receive a Ballot, received a damaged Ballot or lost your Ballot, or if you have questions concerning the procedures for voting on the Plan, please contact Debtor's counsel, at O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, New York 10036, Attention: Gerald C. Bender, Esq., (212) 326-2000 (phone) or (212) 326-2061 (facsimile).

Each Holder of a Claim entitled to vote on the Plan should read this Disclosure Statement, the Plan, the other Exhibits attached hereto and the instructions accompanying the

Ballots in their entirety before voting on the Plan. These documents contain important information concerning the classification of Claims and Interests for voting purposes and tabulation of votes.

**B.      The Solicitation**

At this time, the Plan Proponents are soliciting acceptances of the Plan from the Holders of Class 3 Claims. Holders of Class 4 Interests will not receive any recovery and are deemed to have rejected the Plan. If sufficient votes for acceptance of the Plan are received, the Plan Proponents expect to promptly seek confirmation of the Plan. If the Plan Proponents do not receive the Requisite Acceptances (defined below) by the Voting Deadline, they will be forced to evaluate other available options, including seeking confirmation of the Plan as a cramdown plan pursuant to section 1129(b) of the Bankruptcy Code.

**C.      The Confirmation Hearing**

If the Plan Proponents receive the Requisite Acceptances with respect to the Plan, the Plan Proponents intend to request that the Bankruptcy Court schedule a Confirmation Hearing as soon as possible, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004-1408. The Plan Proponents will request confirmation of the Plan, as it may be modified from time to time, under section 1129(a) of the Bankruptcy Code, and has reserved the right to modify the plan to the extent, if any, that confirmation pursuant to section 1129(a) of the Bankruptcy Code requires modification.

**D.      Voting; Holders of Claims Entitled to Vote**

Pursuant to the provisions of the Bankruptcy Code, only holders of allowed claims or interests that are impaired and that are not deemed to have rejected a chapter 11 plan are entitled to vote to accept or reject a proposed plan. Generally, a claim or interest is impaired under a plan if the holder's legal, equitable or contractual rights are altered under such plan. Classes of claims or interests under a chapter 11 plan in which the holders of such claims or interests are unimpaired are deemed to have accepted the plan and are not entitled to vote to accept or reject the plan. In addition, classes of claims or interests in which the holders of such claims or interests will not receive or retain any property are deemed to have rejected the chapter 11 plan and are not entitled to vote to accept or reject the chapter 11 plan.

In connection with the Plan:

- Holders of Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims and Miscellaneous Secured Claims are Unimpaired and thus Holders of Claims in these Classes are not entitled to vote to accept or reject the Plan;

- Holders of Claims in Class 3 are Impaired and the Holders of such Claims will receive Distributions under the Plan. As a result, Holders of Claims in this Class are entitled to vote to accept or reject the Plan;

- Holders of Interests in Class 4 are Impaired and the Holders of such Interests will not receive or retain any property under the Plan. Therefore, Holders of Interests in this Class are not entitled to vote to accept or reject the Plan.

The Bankruptcy Code defines "acceptance" of a plan by a class of claims or interests as acceptance by creditors in that class that hold at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the claims that cast ballots for acceptance or rejection of the Plan (the "Requisite Acceptances"). **Your vote on the Plan is important**. The Bankruptcy Code requires as a condition to confirmation of a chapter 11 plan that each class that is impaired and entitled to vote under a chapter 11 plan vote to accept such plan, unless the provisions of section 1129(b) of the Bankruptcy Code are employed.

If a Class of Claims entitled to vote on the Plan rejects the Plan, the Plan Proponents reserve the right to amend the Plan or request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code. Section 1129(b) permits the confirmation of a chapter 11 plan notwithstanding the non-acceptance of the plan by one or more impaired classes of claims or interests, so long as at least one impaired class of claims or interests votes to accept the chapter 11 plan. Under that section, a plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and equitable" with respect to each non-accepting class.

If you are entitled to vote to accept or reject the Plan, a Ballot is enclosed for the purpose of voting on the Plan. This Disclosure Statement and the Exhibits attached hereto are the only materials the Plan Proponents are providing to Creditors for their use in determining whether to vote to accept or reject the Plan, and such materials may not be relied upon or used for any purpose other than to vote to accept or reject the Plan.

Please complete, execute and return your Ballot(s) to the Debtor's Claims and Noticing Agent at the address below:

EUSA Liquidation Inc. (f/k/a Escada USA Inc.) Ballot Processing Center
c/o Kurtzman Carson Consultants, LLC
2335 Alaska Avenue
El Segundo, CA 90245
T: (866) 967-0490

TO BE COUNTED, YOUR BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE ACTUALLY RECEIVED BY THE DEBTOR'S CLAIMS AND NOTICING AGENT NO LATER THAN 5:00 P.M., PREVAILING EASTERN TIME, ON MAY ____, 2010 (THE VOTING DEADLINE), UNLESS EXTENDED BY THE PLAN PROPONENTS. YOUR BALLOT MAY BE SENT VIA MAIL, OVERNIGHT COURIER, MESSENGER OR FACSIMILE. ALL BALLOTS MUST BE SIGNED IN ORDER TO BE COUNTED.

If you are a Holder of a Claim entitled to vote on the Plan and did not receive a Ballot, received a damaged Ballot or lost your Ballot, or if you have questions concerning the procedures for voting on the Plan, please call Gerald C. Bender at (212) 326-2000.

The Ballots have been specifically designed for the purpose of soliciting votes on the Plan from the Classes entitled to vote with respect thereto.  Accordingly, in voting on the Plan, please use only the Ballots sent to you with this Disclosure Statement.

The Bankruptcy Court has fixed 5:00 p.m., prevailing Eastern Time, on April 29, 2010 (the "Voting Record Date") as the time and date for the determination of Persons who are entitled to receive a copy of this Disclosure Statement and all of the related materials and to vote whether to accept the Plan.  Accordingly, only Holders of record as of the Voting Record Date that are otherwise entitled to vote on the Plan will receive a Ballot and may vote on the Plan.

All properly completed Ballots received prior to the Voting Deadline will be counted for purposes of determining whether each voting Class of Impaired Claims has accepted the Plan.  Counsel for the Debtor will prepare and File with the Bankruptcy Court a certification of the results of the balloting with respect to the Plan on a class-by-class basis with respect to the Classes entitled to vote.

**E.    Important Matters**

This Disclosure Statement contains projected financial information and certain other forward-looking statements, all of which are based on various estimates and assumptions and will not be updated to reflect events occurring after the date hereof.  Such information and statements are subject to inherent uncertainties.  Consequently, actual events, circumstances, effects and results may vary significantly from those included in or contemplated by such projected financial information and such other forward-looking statements.  The projected financial information contained herein and in the Exhibits annexed hereto is therefore not necessarily indicative of future financial results of the Debtor, which may vary significantly from those set forth in such projected financial information.  Consequently, the projected financial information and other forward-looking statements contained herein should not be regarded as representations by the Plan Proponents, their advisors, or any Person that the projected financial results can or will be achieved.

**ARTICLE III**
**SUMMARY OF PLAN AND CLASSIFICATION AND**
**TREATMENT OF CLAIMS AND INTERESTS THEREUNDER**

The overall purpose of the Plan is to provide for the wind down and efficient liquidation of the Debtor in a manner designed to maximize the recovery to all Creditors.  Generally, the Plan provides for the transfer to each Holder of an Allowed Unsecured Claim, in full satisfaction of such Claim, of a Pro Rata Share of Available Cash by the Liquidating Trustee.  Holders of Interests will not receive a Distribution under the Plan.

The following table differentiates between the Claims against and Interests in the Debtor and summarizes the treatment of each Class under the Plan.  The table also identifies which Classes are entitled to vote on the Plan based on the rules set forth in the Bankruptcy Code.  Finally, the table indicates the estimated recovery for each Class. **The recoveries and estimates described in the following tables represent the Debtor's best estimates given the information available on the date of this Disclosure Statement.  All statements in this**

**Section to the amount of Claims are only estimates based on information known to the Debtor at the date hereof, and the final amounts of Claims Allowed by the Bankruptcy Court may vary significantly from these estimates.**

In connection with preparing the estimation of recoveries set forth herein, the following assumptions were made:

- The aggregate Allowed amount of Administrative Expense Claims (Claims for post-petition expenses of the Debtor and Professional Fee Claims) will be approximately $_____.

- The aggregate Allowed amount of Priority Tax Claims will be approximately $_____.

- The aggregate Allowed amount of Priority Non-Tax Claims will be approximately $_____.

- The aggregate Allowed amount of Miscellaneous Secured Claims will be approximately $_____.

- The aggregate Allowed amount of asserted Unsecured Claims is unknown.

The following table briefly summarizes the classification and treatment of Claims and Interests under the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified.

| Class | Description | Treatment | Impaired | Entitled to Vote | Estimated Amount of Claims or Interests in Class | Estimated Recovery |
|---|---|---|---|---|---|---|
| Unclassified | Administrative Expense Claims | Each Holder of an Allowed Administrative Expense Claim shall receive, at the Liquidating Trustee's option, in full satisfaction, settlement, release, extinguishment and discharge of such claim, either (a) Cash in an amount equal to the Allowed amount of such Claim, (b) such other treatment as may exist in the ordinary course of such Debtor's business, prior to the Effective Date; or (c) such other treatment as may be agreed upon in writing between the Holder of such Administrative Expense Claim and the Debtor, prior to the Effective Date, and | No | No | | 100% |

| Class | Description | Treatment | Impaired | Entitled to Vote | Estimated Amount of Claims or Interests in Class | Estimated Recovery |
|-------|-------------|-----------|----------|------------------|--------------------------------------------------|--------------------|
| | | thereafter the Liquidating Trustee. | | | | |
| Unclassified | Priority Tax Claims | Each Holder of an Allowed Priority Tax Claim shall receive, at the Liquidating Trustee's option, in full satisfaction, settlement, release, extinguishment and discharge of such claim, either (a) Cash in an amount equal to the Allowed amount of such Claim, (b) such other less favorable treatment as may be agreed upon in writing by such Holder and the Debtor, prior to the Effective Date, and thereafter the Liquidating Trustee, (c) such other treatment such that the Claim will not be Impaired. | No | No | | 100% |
| Class 1 | Priority Non-Tax Claims | Each Holder of an Allowed Priority Non-Tax Claim shall receive, at the Liquidating Trustee's option, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, either (a) Cash in an amount equal to the Allowed amount of such Claim, (b) such other less favorable treatment as may be agreed upon in writing by such Holder and the Debtor, prior to the Effective Date, and thereafter the Liquidating Trustee, (c) such other treatment such that the Claim will not be Impaired. | No | No | | 100% |
| Class 2 | Miscellaneous Secured Claims | Each Holder of an Allowed Miscellaneous Secured Claim shall receive, at the Liquidating Trustee's option, in full satisfaction, settlement, release, extinguishment and discharge of such claim, either (a) Cash in an amount equal to the Allowed amount of such Claim, (b) the property | No | No | | 100% |

| Class | Description | Treatment | Impaired | Entitled to Vote | Estimated Amount of Claims or Interests in Class | Estimated Recovery |
|-------|-------------|-----------|----------|------------------|---------------------------------------------------|---------------------|
| | | securing such Miscellaneous Secured Claim, with any deficiency to result in an Allowed Unsecured Claim, (c) such other treatment as may be agreed upon in writing by the Holder of such Claim and the Debtor, prior to the Effective Date, and thereafter the Liquidating Trustee, or (d) such other treatment such that the Claim will not be Impaired. | | | | |
| Class 3 | Allowed Unsecured Claims | Each Holder of an Allowed Unsecured Claim shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, a Pro Rata Share of Available Cash as distributed by the Liquidating Trustee, pursuant to the Plan and Liquidating Trust Agreement. Subsequent Distributions shall be made pursuant to the Liquidating Trust Agreement. Any Distributions to Beneficial Holders of the Allowed Note Guarantee Claim shall be made solely to the Indenture Trustee for further distribution by the Indenture Trustee to or for the benefit of the Beneficial Holders of the Allowed Note Guarantee Claim pursuant to the terms of the Indenture. | Yes | Yes | unknown | unknown |
| Class 4 | Interests | Interests shall be deemed canceled, annulled, extinguished and voided on the Effective Date, and Holders thereof shall not be entitled to any Distributions under the Plan or Bankruptcy Case on account of such Interests. | Yes | No, deemed to have rejected the Plan. | N/A | 0% |

The recoveries set forth above are estimates that are contingent upon, among other things, approval of the Plan as proposed.

# ARTICLE IV
## BUSINESS DESCRIPTION AND REASONS FOR CHAPTER 11

### A.      The Debtor's Business

#### 1.            Description of Debtor's Business

Prior to the sale of substantially all of its assets, as described below, the Debtor, a Delaware corporation, was engaged in the merchandising and selling of imported designer women's apparel through retail boutiques, outlet stores and wholesale distribution channels throughout the United States.  It is a wholly owned subsidiary of Escada AG, a stock corporation organized under the laws of Germany (the "Parent").  The Parent is the operative management entity of the ESCADA Group, an international fashion group for women's apparel and accessories, which is active in the luxury goods markets (the "ESCADA Group").  The Parent directly and indirectly holds shares in individual company subsidiaries (including the Debtor) as well as in sales and production companies in the ESCADA Group and acts as a holding company for the business.

As of August 14, 2009 (the "Petition Date"), the Debtor operated 26 stores (with 2 stores planned to open before year end) and had 239 employees in the United States.  In addition the Debtor sold a portion of its collection in high-end department stores across the United States.  The Debtor's retail and wholesale business accounted for approximately 75% and 25% of net sales, respectively, in fiscal 2008 and 71% and 29% of net sales, respectively, in fiscal 2007.  In the six months ended April 30, 2009, the ESCADA Group achieved 22.6% of its sales in the United States.  In the fiscal year ended October 31, 2008, the ESCADA Group achieved 21% of its sales in the United States.

#### 2.            Corporate History and Structure

ESCADA was founded by Margaretha and Wolfgang Ley in 1974 and the ESCADA brand was introduced in 1979.  In the ESCADA Group, luxury women's apparel for a wide variety of occasions is designed and sold in two product lines, ESCADA and ESCADA Sport.  Accessories such as handbags, shoes and small leather goods are also sold under the ESCADA brand.  In addition, fragrances, eyewear and children's fashions are sold by licensed manufacturers under the ESCADA brand.  The main markets for the sale of products in the ESCADA Group are Western and Eastern Europe, North America and Asia.  Until recently, the ESCADA Group operated two businesses:  the ESCADA business and the PRIMERA Group business.  As part of its initial restructuring efforts, the ESCADA Group entered into, on May 25, 2009 and June 5, 2009, agreements to sell, and have sold or are in the process of selling, the entirety of the PRIMERA Group business.

The ESCADA Group maintains distribution companies in some of its key markets, namely France, Hong Kong, Japan, Spain and the United States.  The functions of these distribution companies include the operation of owned stores in the countries concerned, the selection and supervision of franchisees, the maintenance of contacts with the retail trade including high-end department stores which carry portions of the ESCADA collection, the training of personnel and the management of deliveries and storage for the market in question.

The distribution companies also operate their own delivery centers to some extent. The Debtor is the distribution company of the ESCADA Group in the United States.

The following chart illustrates the organization structure of the significant subsidiaries of the ESCADA Group as of August 13, 2009:



[1] Part of the discontinued PRIMERA Group business, which the ESCADA Group has agreed to sell pursuant to agreements entered into on May 5, 2009 and June 5, 2009.

## B.     Management of the Debtor

As of the Petition Date, the Debtor maintained its corporate headquarters at 1412 Broadway, New York, New York. As of the Petition Date, the executive officers and directors were as follows:

| Name | Title | Other Affiliation |
| --- | --- | --- |
| Dr. Bruno Saelzer | Director and Chairman of the Board | Chief Executive Officer of Escada AG; Managing Board Member of Escada AG |
| Marcus Schuerholz | Director | Chief Financial Officer of Escada AG; Managing Board Member of Escada AG |
| Dr. Werner Lackas | Director | Chief Operating Officer of Escada AG; Managing Member of Escada AG |
| Anthony Lucia | Director; President and Chief Executive Officer | None |
| William H. Scott | Director; Chief Operating Officer | None |
| Christian D. Marques | Executive Vice President, Chief Financial Officer and Treasurer | None |

| Name | Title | Other Affiliation |
|---|---|---|
| Scott A. Klion | Vice President, General Counsel and Secretary | None |

As of the Petition Date, the Debtor employed 239 employees and none of its employees were covered by a collective bargaining agreement.  Currently, as a result of the sale of substantially all of its assets as described in Section E(4), the Debtor's sole employee is Christian D. Marques, serving as President and Treasurer.

## C.    Summary of Prepetition Indebtedness

Based on the information reported by the Parent, the ESCADA Group suffered a net loss of approximately US $130 million in the six months ended April 30, 2009 (approximately US $52 million before taking into account the impairment of the PRIMERA Group business), a net loss of approximately US $99.5 million in the fiscal year ended October 31, 2008, and a net loss of approximately US $38.2 million in the fiscal year ended October 21, 2007.  The Debtor suffered a net loss of approximately US $22.6 million in the six months ended April 30, 2009, a net loss of approximately US $23.97 million in the fiscal year ended October 31, 2008, and a net loss of approximately US $11.0 thousand in the fiscal year ended October 31, 2007.

### 1.    Description of Principal Indebtedness

a)  Inventory Purchases

The Debtor purchases substantially all of its inventory from the Parent.  In order to meet the cash needs of the Debtor's business, the Debtor retains the profits from sales of its apparel, receives advances from the Parent or, in lieu thereof, extensions of the payment of amounts due the Parent for purchases of its inventories.  The Debtor has uncommitted credit lines with Bayerische Hypo- und Vereinsbank AG ("HVB") that are solely used for the posting of letters of credit for its landlords.  The lines of credit expire upon notice by the bank and the Parent guarantees balances outstanding under these credit lines.

b)  Guarantee of 7.5% Senior Notes Due 2012

In March 2005, Parent issued approximately EUR 200 million in 7.5% senior notes due April 1, 2012 (the "Senior Notes"), and are guaranteed by several of Parent's subsidiaries, including the Debtor (the "Senior Notes Guarantee").  Under the outstanding Senior Notes, the Parent was obligated to pay annual interest payments of approximately EUR 15 million.  The interest expense for the Senior Notes had an adverse effect on the results and cash position of the ESCADA Group.  Due to the declining performance of the ESCADA Group and the net losses booked in the two fiscal years prior to the Petition Date, as well as in the six months ended April 30, 2009, the ESCADA Group's normal operating activities were not sufficient to generate the necessary liquidity to continue to operate and make scheduled debt payments to the holders of its Senior Notes.  On December 18, 2009, The Bank of New York

Mellon, as the indenture trustee for the Senior Notes, Filed a Proof of Claim asserting that the Debtor owes $293,662,953.83 pursuant to the Senior Notes Guarantee.

c) Senior Credit Facility and Syndicated Loan Facility

With the Debtor's reservation of rights, the Parent and the Debtor are each a borrower under a loan agreement (the "Senior Credit Facility") dated September 22, 2008, with HVB that is guaranteed by the Parent and by certain of the Parent's direct and indirect subsidiaries, including the Debtor. The Senior Credit Facility provided for two facilities, a revolving credit facility in the amount of approximately EUR 45 million and a bank guarantee facility in the amount of approximately EUR 15 million with a stated maturity date of December 30, 2009. The Senior Credit Facility refinanced the Parent's approximately EUR 90 million senior unsecured syndicated loan facility with a banking syndicate led by Deutsche Bank AG (the "Old Syndicated Loan Facility") dated March 2, 2005, which was guaranteed by the Debtor. On January 29, 2010, HVB Filed an amended Proof of Claim asserting, among other things, that the Debtor owes $5,435,180.75 plus interest, fees and costs pursuant to the Senior Credit Facility Guarantee.

## D.     Events Leading to the Commencement of the Chapter 11 Case

The ESCADA Group recorded significant losses in the six months ended April 30, 2009, and in the fiscal years ended October 31, 2008 and October 31, 2007. These losses were due primarily to the sharp declines in sales of the ESCADA Group's products over the past two years, due in part to lower than expected market acceptance of the ESCADA Group's collections in recent fiscal years and weaker demand for luxury apparel resulting from the deep recession in the ESCADA Group's key markets. The severe collapse of the worldwide financial markets at the very end of the Parent's fiscal year (October 31, 2008) and the continuation and intensification of the resulting recession in the key markets of the ESCADA Group have greatly exacerbated the situation. In part due to the economic downturn and the diminished market for ESCADA, the ESCADA Group was not able to meet the financial covenants under both the Senior Credit Facility and the Old Syndicated Loan Facility and was not able to continue to make the substantial interest payments on the Senior Notes. The global financial crises made it even more difficult to restructure its working capital facilities and the Senior Notes.

## 1.     Pre-Bankruptcy Restructuring Efforts

According to reports from the Parent, the Management Board of the Parent began to implement a comprehensive operating and financing restructuring plan in December 2008. These restructuring efforts involved refocusing operations on the ESCADA brand, reducing costs and improving the liquidity position for the ESCADA Group. In addition to the sale of the PRIMERA Group business, other measures to improve liquidity were taken generating a total of approximately EUR 42 million in cash, including sales of property owned by the Parent and certain subsidiaries, the amendment of the Debtor's lease for its flagship store on New York's Fifth Avenue, the sale of certain receivables of the Parent and the sale of certain trademarks and future receivables.

According to reports from the Parent, as a material part of its restructuring efforts, in June 2009, the Parent sought to implement the following transactions: (i) an offer to exchange the Senior Notes for (a) 10% Senior Secured Cash-Pay Notes due 2014, (b) 17.5% Senior Secured PIK Notes due 2016, (c) 10 shares of the Parent per approximately EUR 1,000 of debt tendered and (d) certain cash consideration, as well as a concurrent consent solicitation to amend the terms and conditions of the Senior Notes (together, the "Exchange Offer and Consent Solicitation"), (ii) a capital reduction by the Parent and a capital increase through the issuance of new shares with subscription rights for existing shareholders to raise gross proceeds of at least approximately EUR 29 million (the "Rights Offering"), and (iii) the amendment of the Senior Credit Facility to, among other things, maintain the existing guarantee facility in an amount of approximately EUR 13 million until December 30, 2009, by waiving compliance with all financial covenants until such time and to include an extension option for one additional year if certain financial conditions were met (the "Senior Credit Facility Amendment"). The consummation of the Exchange Offer and Consent Solicitation was conditioned on, among other things, receipt, on the settlement date, of gross proceeds of at least approximately EUR 29 million from the Rights Offering, and on the effectiveness of the amendment of the Senior Credit Facility as of the Settlement Date. The Exchange Offer and Consent Solicitation expired on August 11, 2009, with the Parent failing to obtain the minimum tender condition of at least 80% of the aggregate principal amount of Senior Notes.

Since the global financial markets crisis in September 2008, the demand for luxury apparel like ESCADA has declined significantly. The economic downturn that developed in the wake of the continuing financial crisis led to a recessionary trend in key countries that were markets for Escada apparel. This downturn has affected and continues to affect customer behavior in general and in the luxury goods sector in particular. These increasingly difficult market conditions since the beginning of fiscal year 2007/2008 exacerbated the effects of declining sales that the ESCADA Group had already been experiencing in previous years, as its collections achieved acceptance by consumers that fell short of the expectations of the ESCADA Group. Therefore, the sales and earnings for the fiscal year 2007/2008 remained significantly below the levels of previous fiscal years. During the six months ended April 30, 2009, the global economic slump accelerated and the ESCADA Group experienced significantly declining sales revenues in key markets, with the most severe losses in its two most significant markets, the United States and Russia. In addition to the declining sales and earnings, the cash position of the ESCADA Group had been negatively affected by its outstanding debt and related interest expense. The global financial crisis had made it even more difficult for the Parent to restructure its working capital facilities and the Senior Notes.

Despite progress made towards increasing liquidity through strategic disposition of assets of the ESCADA Group, the Parent was ultimately unable to implement a material part of its restructuring program out-of-court with its lenders, as evidenced by the failure to consummate the Exchange Offer and Consent Solicitation, Rights Offering and Senior Credit Facility Amendment. As a result, the ability of the Parent to finance its operations had been severely impaired. As a result, the Parent commenced its insolvency proceedings in the Munich District Court, Germany, on August 13, 2009 with the intent to continue business as a going concern and restructure the ESCADA Group business by either an insolvency Plan under German insolvency law or by a structured sale process of the Parent's assets (including the

ESCADA Group entities). To alleviate any disruption to the Debtor's business as a result of the insolvency filing of the Parent, and as part of the implementation of the reorganization of the debt and capital structure of the ESCADA Group as a whole, the Debtor determined that a court-supervised restructuring of the Debtor's business was necessary to preserve and maximize value for its creditors while the global restructuring was being implemented.

## E.    The Chapter 11 Case

### 1.    The Chapter 11 Filing

On August 14, 2009, the Debtor Filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has been managing its properties and operating its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. The Debtor's Bankruptcy Case is currently pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") before the Honorable Stuart M. Bernstein, United Stated Bankruptcy Judge.

### 2.    Professionals Retained by Debtor

Prior to the commencement of the Bankruptcy Case, O'Melveny & Myers LLP ("OMM") was retained by the Debtor with respect to the Debtor's restructuring efforts. On September 15, 2009 the Bankruptcy Court entered an order *nunc pro tunc* to the Petition Date approving the employment of OMM as general bankruptcy counsel to the Debtor.

On August 19, 2009, the Bankruptcy Court entered an order approving the retention of Kurtzman Carson Consultants LLC ("Kurtzman") as notice and claims agent to the Debtor.

On December 3, 2009, the Debtor applied for an order *nunc pro* tunc to October 9, 2009 approving the employment of PricewaterhouseCoopers LLP as independent auditor to the Debtor, which application is still pending.

On December 15, 2009, the Bankruptcy Court entered an order *nunc pro tunc* to the Petition Date approving the employment of Follick & Bessich as special customs counsel to the Debtor.

On March 16, 2010, the Debtor applied for an order approving the employment of Togut, Segal & Segal, LLP as special conflicts counsel to the Debtor, which application is still pending.

### 3.    Appointment of Creditors' Committee and its Professionals

The Official Committee of Unsecured Creditors (the "Committee") in the Bankruptcy Case was appointed by the United States Trustee for the Southern District of New York (the "U.S. Trustee") on September 3, 2009. The Committee retained Otterbourg, Steindler, Houston & Rosen, P.C. as its counsel, effective as of September 8, 2009. The Committee is

currently composed of three (3) members: (i) HVB; (ii) The Bank of New York Mellon; and (iii) Basil D. Postan.[1]

## 4. Key First Day Motions

On the Petition Date, the Debtor Filed a number of motions and other pleadings (the "First Day Motions"), the most significant of which are described below. The First Day Motions were proposed to ensure an orderly transition into chapter 11.

- a motion to pay prepetition wages and other benefits to the Debtor's employees;
- a motion to honor certain prepetition customer programs;
- a motion relating to the continued use of, modification of and to honor certain prepetition obligations of the Debtor's existing cash management system, maintenance of bank accounts and business forms, and to honor the Debtor's request to open or close bank accounts;
- motions relating to case administration and the use of Kurtzman Carson Consultants LLC as Notice and Claims Agent to the Debtor;
- a motion authorizing Debtor to pay prepetition sales taxes;
- a motion to establish procedures for determining adequate assurance for the provision of utility services;
- a motion to continue and maintain insurance policies (including a workers' compensation program); and
- a motion to satisfy the prepetition claims of common carriers and the distribution manager.

The First Day Motions were granted with certain adjustments or modifications to accommodate the concerns of the Bankruptcy Court, the United States Trustee and other parties in interest.

## 5. Sale, Rejection and Other Disposition of the Debtor's Assets

On December 1, 2009, after an extensive global marketing effort, the Parent sold its assets in its German insolvency proceeding to HSBC Trustee (C.I.) Limited as trustees of the Royal II Trust, of 1 Grenville Street, St. Heller, Jersey, JE4 9PF, a subsidiary of the Mittal Family Trusts (the "Purchaser's Affiliate"). Since the closing of the sale of the Parent's assets, the Parent ceased providing financial or marketing support to the Debtor. Therefore the Debtor sought to promptly sell its assets to maintain and to realize for the benefit of its Estate its going concern value. Purchaser's Affiliate expressed an interest in the Debtor's assets during negotiations with the Parent. After extensive due diligence and negotiations, Escada US Subco

---

[1] Initially, a five member Committee was appointed. In September 2009, two members resigned, Specialty Transport Solutions International and Century Direct, LLC, resulting in the current three member composition of the Committee

LLC (the "Purchaser"), a Delaware limited liability company formed by the Purchaser's Affiliate for purposes of acquiring the Debtor's assets, made an offer for the purchase of substantially all of the Debtor's assets, the assumption and assignment of the majority of the Debtor's prepetition contracts and unexpired leases, and the assumption of various liabilities.

On December 21, 2009, the Debtor entered into an Asset Purchase Agreement with the Purchaser and Filed the Debtor's Motion Pursuant to Sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 for (i) Approval of the Sale of Substantially All of the Debtor's Assets, (ii) Authorization to Enter into Agreement in Connection Therewith, (iii) Approval of the Assumption and Assignment, or Rejection of Executory Contracts and Unexpired Leases and (iv) Related Relief [Docket No. 171]. The sale was approved by order of the Bankruptcy Court entered on January 7, 2010 [Docket No. 200] and the closing of the sale took place on January 15, 2010. The Asset Purchase Agreement and all documents executed in connection with or in furtherance thereof, will remain binding on the Debtor's Estate and the Liquidating Trust after the Effective Date.

On January 15, 2010, the majority of Debtor's executory contracts and unexpired leases were assumed by Purchaser. Those contracts assumed by Purchaser that were in default have been or will be cured by the Debtor or Purchaser. Any executory contract or unexpired lease not specifically assumed by Purchaser or addressed in the Plan or specifically rejected pursuant to authorization by the Court or operation of the Bankruptcy Code, on or before the Effective Date, shall be deemed to be rejected. Section V of this Disclosure Statement and Article X of the Plan provide additional information about the assumption and rejection of the executory contracts and unexpired leases and for the Filing of Claims for damages arising from the rejection of any such contracts or leases.

### 6. The Debtor's Schedules and Bar Dates

On October 14, 2009, the Debtor Filed its Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and Statements of Financial Affairs (collectively, the "Schedules") with the Bankruptcy Court [Docket No. 111-112] and Filed Amendments to the Schedules on October 28, 2009 [Docket No. 122] and November 24, 2009 [Docket No. 147].

On November 19, 2009, the Bankruptcy Court entered an order setting a bar date of December 24, 2009 at 5:00 p.m. (prevailing Eastern time) for the Filing of prepetition Proofs of Claim for non-governmental units, and February 12, 2010 for governmental units [Docket No. 142]. On February 23, 2010, the Bankruptcy Court entered an order setting a bar date of March 31, 2010 at 5:00 p.m. (prevailing Eastern time) for the Filing of Administrative Expense Claims against the Debtor [Docket No. 256].

### 7. Administrative Expenses

Administrative expenses payable in the Bankruptcy Case include, among other things, fees and expenses of attorneys, accountants and other Professionals retained by the Debtor and the Committee. These fees are generally calculated as the product of the customary hourly billing rates and the aggregate hours billed by such Professionals.

Additional administrative expenses include the fees payable to the U.S. Trustee. These fees have been paid by the Debtor as they have accrued during the pendency of the Bankruptcy Case. Any unpaid fees due to the U.S. Trustee will be paid in full on the Effective Date. In addition, the Debtor has paid in the ordinary course the fees and expenses of Kurtzman for services rendered as the Debtor's notice and claims agent. Any unpaid fees and expenses of Kurtzman will be paid in full on the Effective Date.

Each Person that asserts a Claim for administrative expenses (not including Professional Fee Claims) arising on or after the Petition Date through and including January 14, 2010 must File a request for such Administrative Expense Claim with the Bankruptcy Court or Kurtzman, the Debtor's Claims and Notice Agent, on or before the March 31, 2010. Requests for Claims for administrative expenses arising on or after January 15, 2010 and requests for all Professional Fee Claims must be Filed on or before thirty (30) days after the Effective Date.

## ARTICLE V
## THE DEBTOR'S CHAPTER 11 PLAN

The summary of the Plan contained herein is qualified in its entirety by reference to the Plan and the Exhibits to this Disclosure Statement and the Plan. It is the Plan and orders entered by the Bankruptcy Court and not this Disclosure Statement that govern the rights and obligations of the parties.

### A.  Classification and Treatment of Claims and Interests

Section 1122 of the Bankruptcy Code provides that a plan of liquidation must designate classes of claims and interests, each of which must contain only substantially similar claims or interests. The following describes the significant Claims and Interests in the Debtor's Bankruptcy Case and the manner in which they are classified and treated under the Plan.

Consistent with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not included in any Classes of Claims or Interests. As defined in the Plan, "Administrative Expense Claims" are any Claims for costs and expenses of administration of the Bankruptcy Case allowed under sections 503(b) or 507(a) of the Bankruptcy Code, including Professional Fee Claims, and all fees and costs assessed against the Estate pursuant to 28 U.S.C. § 1930. Also as defined in the Plan, "Priority Tax Claims" are any Claims entitled to priority in payment under section 502(i) or section 507(a)(8) of the Bankruptcy Code.

### 1.  Classification

The Plan provides for the classification and treatment of four Classes of Claims and Interests. A Claim or Interest will be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and will be deemed classified in a different Class to the extent that any remainder of the Claim or Interest qualifies within the description of such different Class. A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such

Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.

a) Class 1—Priority Non-Tax Claims

Class 1 Claims consist of Priority Non-Tax Claims. A Priority Non-Tax Claim is all or a portion of a Claim entitled to priority in payment under section 507 of the Bankruptcy Code, excluding any Claim that is an Administrative Expense Claim, a Priority Tax Claim or a Claim under section 507(a)(2) of the Bankruptcy Code.

b) Class 2—Miscellaneous Secured Claims

Class 2 Claims consist of Miscellaneous Secured Claims. A Miscellaneous Secured Claim is a Claim that is secured by a valid unavoidable lien on property in which the Estate has an interest, or that is subject to recoupment or set off under section 553 of the Bankruptcy Code to the extent of the value of the Holder's interest in the Estate's interest in such property, or to the extent of the amount subject to recoupment or set off, as determined by the Bankruptcy Court pursuant to section 506(a), 553 and/or 1129(b)(2)(A)(i)(II), as applicable.

c) Class 3—Unsecured Claims

Class 3 Claims consist of all Unsecured Claims, which are all Claims that are not Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Miscellaneous Secured Claims, or Interests.

d) Class 4—Interests

Class 3 consists of all Interests, defined as any ownership interest or share in the Debtor (including, without limitation, all options, warrants or other rights to obtain such an interest or share in the Debtor) whether or not transferable, preferred, common, voting, or denominated "stock" or a similar security.

The following chart sets forth the Debtor's estimate of the Allowed amounts of the Claims in each Class:

### Summary Chart of Claims and Interests

| Class | Estimated Amount[2] | Estimated Recovery |
|---|---|---|
| Administrative Expense Claims | $_____ | 100% |

---

[2] The Allowed amount of Claims may be materially higher or lower than the estimated amounts.

| Class | Estimated Amount[2] | Estimated Recovery |
|---|---|---|
| Priority Tax Claims | $_____ | 100% |
| Class 1 - Priority Non-Tax Claims | $_____ | 100% |
| Class 2 - Miscellaneous Secured Claims | $_____ | 100% |
| Class 3 - Unsecured Claims | Unknown | Unknown |
| Class 4 - Interests | N/A | No Recovery |

**B.      Treatment of Claims and Interests**

A Claim is entitled to a Distribution only to the extent that the Claim is "Allowed".  "Allowed" means, as it relates to any Claim, a Claim (i) which has been scheduled as undisputed, noncontingent and liquidated in the Schedules (subject to Debtor's right to amend the Schedules) and as to which no objection or request for estimation has been Filed on or before any Claim objection deadline set by the Bankruptcy Court or the expiration of such other period fixed by the Bankruptcy Court; (ii) as to which a Proof of Claim has been properly and timely Filed and either (a) no objection thereto has been timely Filed, or if an objection has been timely Filed, any portion of which is not subject to such objection, or (b) such Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court; (iii) which is compromised, settled or otherwise resolved pursuant to the authority granted to the Debtor, prior to the Effective Date, and thereafter the Liquidating Trustee under the Plan; or (iv) which has been expressly allowed under the provisions of the Plan.  An Allowed Claim will not, for purposes of computation of Distributions under the Plan, include interest on such Claim from and after the Petition Date.

A number of Claimants will File Claims in excess of their scheduled amounts or to which they are not entitled.  The Debtor, prior to the Effective Date, and thereafter the Liquidating Trustee will review these Filed Claims, attempt to reconcile them with their books and records and File objections as necessary.  This shall be without prejudice to the rights of the Committee or other parties in interest to file objections to Claims prior to the Effective Date.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not included in any Classes of Claims or Interests.  Each Holder of an Allowed Administrative Expense Claim shall receive, at the Liquidating Trustee's option, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, either (a) Cash in an amount equal to the Allowed amount of such Claim, (b) such other treatment as may exist in the ordinary course of such Debtor's business, prior to the Effective

Date, or (c) such other treatment as may be agreed upon in writing between the Holder of such Administrative Expense Claim and the Debtor, prior to the Effective Date, and thereafter the Liquidating Trustee.

Each Holder of an Allowed Priority Tax Claim shall receive, at the Liquidating Trustee's option, in full satisfaction, settlement, release, extinguishment and discharge of such claim, either (a) Cash in an amount equal to the Allowed amount of such Claim, (b) such other less favorable treatment as may be agreed upon in writing by such Holder and the Debtor, prior to the Effective Date, and thereafter the Liquidating Trustee, or (c) such other treatment such that the Claim will not be Impaired.

The following is a summary of the manner in which the Classes of Claims and Interests are treated under the Plan. The Plan Proponents believe that the treatment afforded all Classes of Claims and Interests under the Plan fully comports with the requirements of the Bankruptcy Code and case law.

1.        **Allowed Priority Non-Tax Claims (Class 1)**

Holders of Allowed Priority Non-Tax Claims are Unimpaired and, pursuant to section 1126(f) of the Bankruptcy Code, are not entitled to vote on the Plan and deemed to accept the Plan. Each Holder of an Allowed Priority Non-Tax Claim shall receive, at the Liquidating Trustee's option, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, either (a) Cash in an amount equal to the Allowed amount of such Claim, (b) such other less favorable treatment as may be agreed upon in writing by such Holder and the Debtor, prior to the Effective Date, and thereafter the Liquidating Trustee, or (c) such other treatment such that the Claim will not be Impaired.

2.        **Allowed Miscellaneous Secured Claims (Class 2)**

Holders of Allowed Miscellaneous Secured Claims are Unimpaired and, pursuant to section 1126(f) of the Bankruptcy Code, are not entitled to vote on the Plan and deemed to accept the Plan. Each Holder of an Allowed Miscellaneous Secured Claim shall receive, at the Liquidating Trustee's option, in full satisfaction, settlement, release, extinguishment and discharge of such claim, either (a) Cash in an amount equal to the Allowed amount of such Claim, (b) the property securing such Miscellaneous Secured Claim, with any deficiency to result in an Allowed Unsecured Claim, (c) such other treatment as may be agreed upon in writing by the Holder of such Claim and the Debtor, prior to the Effective Date, and thereafter the Liquidating Trustee, or (d) such other treatment such that the Claim will not be Impaired.

3.        **Allowed Unsecured Claims (Class 3)**

Holders of Allowed Unsecured Claims (Class 3) are Impaired and entitled to vote on the Plan. Each Holder of an Allowed Unsecured Claim shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, a Pro Rata Share of Available Cash by the Liquidating Trustee pursuant to the Plan and Liquidating Trust Agreement. Subsequent Distributions shall be made pursuant to the Liquidating Trust Agreement. Any Distributions to Beneficial Holders of the Allowed Note Guarantee Claim shall be made solely to

the Indenture Trustee for further distribution by the Indenture Trustee to or for the benefit of the Beneficial Holders of the Allowed Note Guarantee Claim pursuant to the terms of the Indenture.

**4.      Interests (Class 4)**

On the Effective Date, all Interests of the Debtor will be canceled, annulled, extinguished and voided, and Holders thereof will not be entitled to any Distribution whatsoever under the Plan or in the Bankruptcy Case on account of such Interests. Holders of Interests (Class 4) are Impaired, and the members of such Class will not receive or retain any property under the Plan or the Bankruptcy Case on account of their Interests. Accordingly, the members of Class 4 are presumed to have rejected the Plan under section 1126(g), and will not be entitled to vote.

**C.      Implementation of Plan; Establishment of Liquidating Trust**

**1.      Establishment of the Liquidating Trust**

Section 7.1 of the Plan provides that on the Effective Date, the Debtor and the Committee, on their own behalf and on behalf of Holders of Allowed Claims, shall execute the Liquidating Trust Agreement attached hereto as <u>Exhibit C</u> and take all other steps necessary to establish the Liquidating Trust. On the Effective Date, the Debtor shall transfer and be deemed to have transferred to the Liquidating Trust all of its right, title, and interest in and to all of the Trust Assets and any and all other remaining property of the Debtor and its Estate, free and clear of any Lien, Claim or interest in such property of any other Person except as provided in the Plan. In addition, the exclusive right, but not the obligation, to investigate and pursue any and all Estate Actions shall vest in the Liquidating Trust. Title to all Trust Assets shall vest in the Liquidating Trust on the Effective Date. The Debtor, or such other Persons that may have possession or control of all other assets of the Estate, shall transfer possession or control of such assets to the Liquidating Trustee and shall cooperate with the Liquidating Trustee by executing documents or instruments necessary to effectuate such transfers or that shall aid implementation of the deemed transfers under the Plan. All Cash held in the Liquidating Trust shall be invested in accordance with the Liquidating Trust Agreement.

a)      <u>Purpose of the Liquidating Trust</u>

The Liquidating Trust shall be established for the sole purpose of liquidating and distributing the Trust Assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. Subject to definitive guidance from the Internal Revenue Service (the "<u>IRS</u>"), all parties shall treat the Liquidating Trust as a liquidating trust for all federal income tax purposes.

b)      <u>Transfer of Assets to Liquidating Trust</u>

The transfer of the Trust Assets into the Liquidating Trust shall be made, as provided in the Plan and in the Liquidating Trust Agreement, for the benefit of the Holders of Allowed Claims, whether Allowed on or after the Effective Date, and such other Persons and Professionals as provided in the Plan. After the transfer of the Trust Assets to the Liquidating

Trust, the Liquidating Trustee shall make Distributions in accordance with and subject to the terms and conditions of the Plan, the Liquidating Trust Agreement and the Confirmation Order. The transfer of the Trust Assets to the Liquidating Trust shall be treated by all parties for all federal income tax purposes as if all the transferred assets had been first transferred to the Liquidating Trust Beneficiaries and then transferred by such beneficiaries to the Liquidating Trust.

 c) <u>Intent to Pursue Causes of Action after Confirmation</u>

   Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, as of the Effective Date, the Liquidating Trustee shall have the exclusive right, authority and discretion to investigate, pursue, object to, settle or compromise any and all Estate Actions on behalf of and for the benefit of the Estate and its Creditors. Any Person, Entity or other party subject to an Estate Action should assume that the Debtor or Liquidating Trustee may take any action appropriate to prosecute or enforce such cause of action against them, regardless of how such Person, Entity or other party may have voted on the Plan. No party should assume that any general release or general discharge provision contained in the Plan, or the Confirmation Order, will bar or otherwise inhibit the Debtor, prior to the Effective Date, or thereafter the Liquidating Trustee from taking any action to prosecute or enforce any causes of action under any provision of the Bankruptcy Code or any applicable nonbankruptcy law. All Cash received by the Liquidating Trust as a result of prosecution or settlement of any Estate Action or of enforcement of any judgment or order obtained in connection with any Estate Action shall be distributed in accordance with the terms of the Plan.

 d) <u>Termination</u>

   The Liquidating Trust shall terminate no later than the third (3rd) anniversary of the Effective Date; <u>provided</u>, <u>however</u>, that, on or prior to the date six (6) months prior to such termination, the Bankruptcy Court, upon motion by a party in interest, including the Liquidating Trustee, may extend the term of the Liquidating Trust, upon notice to all parties listed in the Special Notice List, if it is necessary to complete the liquidation of the Trust Assets. Notwithstanding the foregoing, multiple extensions can be obtained so long as Bankruptcy Court approval is requested at least six (6) months prior to the expiration of each extended term; <u>provided</u>, <u>however</u>, that the aggregate of all such extensions shall not exceed three (3) years, unless the Liquidating Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the trust as a liquidating trust within the meaning of the Treasury Regulation Section 301.7701-4(d) for federal income tax purposes. The Liquidating Trustee shall further cause the Liquidating Trust to be terminated within three (3) months after making the Final Distribution.

 **2.**  **Appointment of the Liquidating Trustee**

   The Confirmation Order shall provide for the appointment of Clingman & Hanger Management Associates, LLC as Liquidating Trustee. The Liquidating Trustee shall be the exclusive trustee of the Trust Assets for purposes of section 3713(b) of title 31 and section 6012(b)(3) of title 26 of the United States Code, as well as the representative of the Estate in accordance with section 1123 of the Bankruptcy Code and shall have all the powers, authority

and responsibilities specified in the Liquidating Trust Agreement, including without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code. The compensation for the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement. From and after the Effective Date, the Liquidating Trustee shall act for the Debtor in the same fiduciary capacity as applicable to a board of directors and officers, subject to the provisions hereof, and shall succeed to such powers as would have been applicable to the Debtor's officers and directors. From and after the Effective Date, the Liquidating Trustee shall be the sole representative of, and shall act for, the Debtor. Accordingly, from and after the Effective Date, the Liquidating Trustee shall make all Distributions contemplated under the Plan and shall have the exclusive right to settle or compromise any Disputed Claim or Estate Action pursuant to the terms of the Liquidating Trust Agreement.

### 3. Distributions on Account of Beneficial Interests

To the extent Available Cash is available, the Liquidating Trustee shall, in the discretion of the Liquidating Trustee, make distributions of Available Cash from the Liquidating Trust to the Liquidating Trust Beneficiaries in accordance with the Liquidating Trust Agreement and the Plan. Any proceeds received from the liquidation of the Trust Assets shall be distributed in accordance with the Liquidating Trust Agreement and the Plan.

### 4. Establishment of Accounts and Reserves

On the Effective Date, and in conjunction with making all Distributions required to be made on the Effective Date, the Debtor or the Liquidating Trustee, as the case may be, shall establish the General Disbursement Account, the Administrative Claims Reserve, the Priority Tax Reserve, the Expense Reserve and the Disputed Unsecured Claims Reserve, all of which shall be interest-bearing accounts and shall be administered by the Liquidating Trustee. As outlined in Section 7.5.1 of the Plan, on the Effective Date, all of the Debtor's assets will be transferred to the General Disbursement Account, from which the Liquidating Trustee shall fund (i) the Administrative Claims Reserve with Cash in an amount sufficient to pay the full amount of all Disputed Administrative Expense Claims, all Disputed Priority Tax Claims, all Disputed Priority Non-Tax Claims and all estimated unpaid Professional Fee Claims; (ii) the Priority Claims Reserve with Cash in an amount necessary to fund payment of all Priority Tax Claims and Priority Non-Tax Claims outstanding as of the Effective Date, and (iii) the Expense Reserve with Cash in an amount of $400,000 to pay the Post-Effective Date Costs, including such costs as are necessary to effectuate the liquidation of the remaining assets, administering the Liquidating Trust, including payments to its Professionals, as well as funding any necessary or appropriate litigation against third parties, in accordance with the Plan. On and after the Effective Date, any Distributions that would otherwise be made to the Holders of Disputed Unsecured Claims will be transferred to the Disputed Unsecured Claims Reserve.

#### a) Termination of the Disputed Claims Reserves

The Administrative Claims Reserve and the Disputed Unsecured Claims Reserve shall be terminated by the Liquidating Trustee when all Disputed Claims related to such accounts have either become Allowed Claims or Disallowed, and Distributions required to be made under the Plan have been made in accordance with the terms of the Plan.

5.       **Distributions on Account of Disputed Claims**

A Disputed Claim, to the extent it becomes an Allowed Claim for Distribution purposes, shall receive from the applicable Disputed Claims Reserve any amounts held in such Disputed Claims Reserve attributable to the Allowed amount of such Claim, as set forth in the Plan. Any Cash Distributions held in the applicable Disputed Claims Reserve for the benefit of the Holder of a Disputed Claim, which is subsequently Disallowed, in whole or in part, shall be distributed, in the Liquidating Trustee's discretion, on a Pro Rata basis to the Liquidating Trust Beneficiaries. The Liquidating Trustee may elect to delay making a Pro Rata Distribution to all Liquidating Trust Beneficiaries until sufficient Available Cash is available to meet the minimum Distribution requirements set forth in the Plan or if delaying such Distribution to a subsequent Payment Date would be more efficient and economical as determined by the Liquidating Trustee.

6.       **No Recourse**

Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other Holders of Allowed Claims in the respective Class, no Holder of a Claim shall have recourse against the Debtor, the Estate, the Committee, the Liquidating Trust, the Trust Assets, the Liquidating Trustee, or any of their respective Professionals, consultants, officers, directors or members or their successors or assigns, or any of their respective property.

7.       **Disputed Payments or Distributions**

In the event of any dispute between or among Holders of Allowed Claims as to the right of any Person to receive or retain any Distribution to be made to such Holders under the Plan, the Liquidating Trustee may, in lieu of making such Distribution to such entity, make it instead into an escrow for payment or Distribution as ordered by the Bankruptcy Court or as the interested parties to such dispute may otherwise agree in writing among themselves.

8.       **Investment of Disputed Claims Reserves**

Section 7.9 provides that the Liquidating Trustee shall be permitted, from time to time, to invest all or a portion of the Cash in the Disputed Claims Reserves in United States Treasury Bills, interest-bearing certificates of deposit, tax exempt securities, money market accounts or investments permitted by section 345 of the Bankruptcy Code or otherwise as authorized by the Bankruptcy Court, using prudent efforts to enhance the rates of interest earned on such Cash without inordinate credit risk or interest rate risk. All interest earned on such Cash shall be held in the Disputed Claims Reserves and, after satisfaction of any expenses incurred in connection with the maintenance of such Disputed Claims Reserves, including taxes payable on such interest income, if any, shall be transferred out of such Disputed Claims Reserves and, in the discretion of the Liquidating Trustee, be used to satisfy the costs of administering and fully consummating the Plan or become Available Cash for distribution in accordance with the Plan.

9.       **Post-Effective Date Costs**

Section 7.10 of the Plan provides that from and after the Effective Date, the Liquidating Trustee shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of its Professionals thereafter incurred on behalf of the Debtor or the Liquidating Trustee, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan. On a monthly basis, all Professionals shall serve a detailed invoice to the Liquidating Trustee. If the Liquidating Trustee disputes the reasonableness of any such invoice within fifteen (15) days of service of such invoice, the Liquidating Trustee or the affected Professional may submit such dispute to the Bankruptcy Court for determination of reasonableness of such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. If no objections are raised to an invoice in accordance with the deadline established above, the Liquidating Trustee shall promptly pay such invoice in full.

## D.     Provisions Governing Distributions Under the Plan

### 1.     The Initial Distribution

Except as otherwise provided in the Plan or by order of the Bankruptcy Court, the Initial Distribution will be made by the Liquidating Trustee to Holders of Allowed Unsecured Claims after satisfaction in full of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Miscellaneous Secured Claims, as well as reserving in full for all Disputed Claims and Post-Effective Date Costs, as determined by the Liquidating Trustee; provided, however, that the Initial Distribution may also be the Final Distribution if so determined by the Liquidating Trustee. As set forth in Section 7.5.1 of the Plan, on the Effective Date, all Available Cash of the Debtor will be transferred to the General Disbursement Account, from which the Liquidating Trustee shall establish and fund the Reserves as described in Section 7.5 and pay, in full and in Cash, on the Effective Date or as soon thereafter as is practicable (i) all Allowed Administrative Expense Claims, (ii) all Allowed Priority Tax Claims and (iii) all Allowed Priority Non-Tax Claims.

### 2.     Timing of Subsequent Distributions

Section 8.2 of the Plan provides that following the Initial Distribution, the Liquidating Trustee shall make Distributions to the Liquidating Trust Beneficiaries on each Payment Date, as appropriate, or on the Final Distribution Date. If a Claim is not an Allowed Claim as of the Distribution Date, Distributions will be made only if and when the Claim is an Allowed Claim.

#### a)     Timing of Final Distribution

The Final Distribution shall have occurred when, after giving effect to a Distribution of Available Cash, there are remaining Trust Assets with a de minimis value and the Liquidating Trustee determines, or the Bankruptcy Court otherwise orders after notice and a hearing, that such Distribution is the final Distribution to a Holder of an Allowed Claim under the Plan. For the Estate, the Final Distribution will be after (i) the liquidation into Cash of all remaining assets of the Debtor (other than any assets abandoned by the Debtor or the Liquidating Trust) and collection of other sums due or otherwise remitted or returned to the Debtor and (ii)

all Cash in the Reserves has been distributed or made available as Available Cash in accordance with the Plan or the Liquidating Trust Agreement.

**3.      Requirements for Allowance of Claims**

No payment or other Distributions shall be made on account of any Claim to the extent it is not an Allowed Claim.  To the extent that a Disputed Claim becomes an Allowed Claim or a Disputed Administrative Expense Claim becomes an Allowed Administrative Expense Claim, Distributions, if any, shall be made to the Holder of such Allowed Claim or Allowed Administrative Expense Claim in accordance with the provisions of the Plan. Distributions made after the Effective Date to Holders of Claims that become Allowed Claims after the Effective Date shall be deemed to have been made on the Effective Date.

**4.      Minimum Distribution**

Section 8.4 of the Plan provides that no Cash payment of less than fifteen ($15.00) dollars shall be made to any Holder of a Allowed Claim or Beneficial Interest on account of its Allowed Claim unless either a request therefor is made in writing to the Liquidating Trustee by the Holder of the Allowed Claim and the Liquidating Trustee determines to make such payment in its sole and absolute discretion.

**5.      Undeliverable Distributions**

If any Distribution to the Holder of an Allowed Claim is returned as undeliverable, no further Distributions shall be made to such Holders unless and until the Liquidating Trustee is notified in writing of such Holder's then-current address.  Undeliverable Distributions made by the Liquidating Trustee and any other unclaimed Distributions shall become a Trust Asset and be deposited in the appropriate Disputed Claim Reserve until such time as the Distribution becomes deliverable.  Any Holder of an Allowed Claim that does not assert a claim for an undeliverable Distribution to be made by the Liquidating Trustee within one hundred and eighty (180) days after the later of (i) the Effective Date and (ii) the last date on which a Distribution was deliverable to such Holder, will have its claim for such undeliverable Distribution deemed satisfied, waived and released and will be forever barred from asserting any such claim against the Debtor, the Estate, the Liquidating Trust, the Trust Assets, the Liquidating Trustee and any accounts or reserves.  Any unclaimed Distributions pursuant to this section shall be Available Cash for Distribution as part of the Final Distribution.  The Liquidating Trustee shall have no obligation to attempt to locate any Holder of an Allowed Claim with regard to whom a Distribution has been returned as undeliverable, forwarding time expired or similar indication.  Undeliverable Distributions shall not be entitled to any interest, dividends or other accruals of any kind.

**6.      Setoff**

In accordance with the Plan, section 553 of the Bankruptcy Code and applicable non-bankruptcy law, the Debtor, prior to the Effective Date, and thereafter the Liquidating Trustee may, but shall not be required to, set off against any Claim, and the Distributions to be made pursuant to the Plan by the Liquidating Trustee with respect to such Claim, claims of any

nature whatsoever that the Debtor, the Estate or the Liquidating Trustee may have against the Holder of such Claim. Notwithstanding the foregoing, the failure to effect such a setoff or the allowance of any claim hereunder will not constitute a waiver or release by the Debtor, the Liquidating Trustee or the Estate of any such claim, right or cause of action against such Holder.

### 7.         No Postpetition Interest on Claims

Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

### 8.         Distributions Paid to Holders of Record

Section 8.8 of the Plan provides that all Distributions to be made pursuant to the Plan with respect to Claims of any nature whatsoever may be made by the Liquidating Trustee to the Holder of record as of the Record Date. The Liquidating Trustee will make Distributions to the Holders of Allowed Claims at the address set forth in the Schedules, if no Proof of Claim has been Filed, or at the address on the Proof of Claim. To the extent that any Claims are transferred, assigned or alienated in any way after the Record Date, the Liquidating Trustee, on its own behalf and on behalf of the Debtor, has the right, in its sole discretion, to ignore and disregard such transfer or assignment and to make the Distribution to the Holder of record of such Claim as of the Record Date.

### 9.         Release of Reserve Funds

Any Cash remaining in any Reserve, after all applicable Distributions or other payments have been made from said Reserve, shall be released therefrom by the Liquidating Trustee and treated as Available Cash for distribution in accordance with the Plan.

### 10.         Failure to Negotiate Checks

Section 8.12 of the Plan provides that checks issued in respect of Distributions under the Plan shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance. Any amounts returned to the Liquidating Trust in respect of such non-negotiated checks shall be held by the Liquidating Trustee for a period of one hundred and twenty (120) days from the date of issuance, requests for reissuance for any such check shall be made directly to the Liquidating Trustee by the Holder of the Allowed Claim with respect to which such check was issued originally and shall be accompanied by the original check. Any Claim in respect of such voided check shall be made on or before thirty (30) days following the expiration of the one hundred and twenty (120) day period from issuance of such check. Thereafter, all such amounts shall be deemed Unclaimed Property and irrevocably revert to the Liquidating Trust, and all Claims in respect of voided checks shall be forever barred, estopped and enjoined from assertion in any manner against the Debtor, the Estate, the Liquidating Trust, the Trust Assets, or the Liquidating Trustee.

**11.        Limitation on Distribution Rights**

If a Holder of an Allowed Claim holds more than one Allowed Claim in any one Class, all Allowed Claims in that Class may be aggregated in the discretion of the Liquidating Trustee and one Distribution will be made to the Holder with respect to the aggregated Claim.

**E.        Implementation and Means of Consummating the Plan**

**1.        Limited Survival and Ultimate Dissolution of Corporate Entities**

From and after the Confirmation Date, the Debtor shall continue in existence pursuant to the terms of the Plan until the Effective Date for the purposes of (a) winding up its affairs as expeditiously as reasonably possible, (b) liquidating, by converting to Cash or other methods, any remaining Trust Assets, as expeditiously as reasonably possible and (c) otherwise taking such steps and actions to transfer all Estate Actions and any other Trust Assets to the Liquidating Trust.  Upon the Effective Date, the Liquidating Trustee shall be authorized to take all actions necessary to implement the Plan, including (i) serving as the sole officer and director of the post-Effective Date Debtor, (ii) liquidating assets, (iii) abandoning assets, (iv) pursuing Estate Actions, (v) enforcing and prosecuting claims, interests, rights and privileges of the Debtor, (vi) objecting to and resolving Disputed Claims, (vii) investing Cash, (viii) taking all steps to execute all instruments and documents necessary to effectuate the Distributions to be made under the Plan, (ix) making Distributions contemplated by the Plan, (x) complying with the Plan and the obligations thereunder, (xi) commencing and prosecuting all proceedings related to the Plan, (xii) maintaining all bank accounts in the name of the Debtor, (xiii) employing, retaining, terminating, or replacing Professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan, (xiv) paying any and all reasonable fees and expenses of the Estate and the Liquidating Trust, (xv) administering and paying taxes, including filing of tax returns, (xvi) requesting an expedited determination of any unpaid tax liability of the Debtor or the Estate under section 505 of the Bankruptcy Code, (xvii) representing the interest of the Debtor or the Estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit, (xviii) taking all steps reasonably necessary and practicable to terminate the corporate existence of the Debtor and (xix) exercising such other powers as may be vested in it pursuant to order of the Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.  In the event the dissolution of the Debtor is delayed beyond the Effective Date, the Liquidating Trustee shall dissolve the Debtor as soon as reasonably practical.  From and after the Effective Date, to the extent the bylaws, certificate of incorporation or other charter and corporate documents of the Debtor are inconsistent with the terms and provisions of the Plan, the Plan shall supersede such bylaws, certificate of incorporation, or other charter and other corporate documents, as the case may be.

**2.        Governance of Trust Assets**

The Trust Assets will be managed by the Liquidating Trustee, subject to the provisions of the Plan, the Liquidating Trust Agreement and the Confirmation Order.

**3.        Dissolution of the Committee**

On the Effective Date, the Committee shall be automatically dissolved and all members, Professionals and agents of the Committee shall be deemed released from their duties and obligations, except solely with respect to applications for Professional Fee Claims pursuant to Section 3.1.2 of the Plan, reimbursement of expenses incurred as a member of the Committee, any motions, appeals or other actions seeking enforcement or implementation of the provisions of the Plan or the Confirmation Order or pending appeals of orders entered in this case. Further, after the Effective Date, the Committee's counsel shall be entitled to fees and expenses in accordance with Section 7.10 of the Plan limited to the services described in Section 9.4 of the Plan.

4. **Cancellation of Notes, Instruments, Debentures and Interests**

On the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, (i) any notes, bonds, indentures, guarantees or other instruments or documents evidencing or creating any indebtedness or obligations of the Debtor shall be canceled and extinguished solely as to the Debtor, (ii) the obligations of the Debtor under any agreements, documents, indentures or certificates of designation governing the Note Guarantee Claim and any other notes, bonds, indentures, guarantees or other instruments or documents evidencing or creating any indebtedness or obligations of the Debtor that are Impaired under the Plan shall be discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers or directors of the Debtor or the Liquidating Trustee or by any other Person, and (iii) the Interests shall be canceled (and all securities convertible or exercisable for or evidencing any other right in or with respect to the Interests) without any conversion thereof or distribution with respect thereto. Notwithstanding the foregoing, and only to the extent applicable to the Debtor, the Indenture shall continue in effect solely to the extent necessary to (i) allow the Indenture Trustee to make distributions pursuant to the Plan on account of the Notes, (ii) permit the Indenture Trustee to assert its charging lien against distributions on account of the Notes, (iii) permit the Indenture Trustee to appear in this case and any other proceeding, including, without limitation, in connection with any contested matter or adversary proceeding to which the Indenture Trustee is a party, and (iv) to permit the Indenture Trustee to perform any functions that are necessary in connection with the foregoing clauses.

5. **Closing of the Bankruptcy Case**

Section 9.6 of the Plan provides that when all Disputed Claims Filed against the Debtor have become Allowed Claims or have been Disallowed by Final Order, and all remaining assets of the Debtor have been liquidated and converted into Cash (other than those assets abandoned by the Debtor), and such Cash has been distributed in accordance with the Plan, or at such earlier time as the Liquidating Trustee deems appropriate, the Liquidating Trustee shall File a certificate of completion of Distributions with the Bankruptcy Court and seek authority from the Bankruptcy Court to close the Bankruptcy Case in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

F. **Other Plan Provisions**

1.	**Executory Contracts**

Section 10.1 of the Plan provides that effective on and as of the Effective Date and except as provided in Sections 10.2 and 10.3 of the Plan, all Executory Contracts that exist between the Debtor and any Person and that have not previously been assumed and assigned or rejected by the Debtor will be deemed rejected pursuant to section 365 of the Bankruptcy Code. Entry of the Confirmation Order shall constitute approval, pursuant to section 365(a) of the Bankruptcy Code, of the rejection of executory contracts rejected pursuant to the Plan. Unless otherwise provided by Order of the Bankruptcy Court, Proofs of Claim for damages allegedly arising from the rejection pursuant to the Plan or the Confirmation Order of any Executory Contract must be Filed with the Bankruptcy Court and served on the Liquidating Trustee not later than thirty (30) days after the Effective Date. All Proofs of Claim for such damages not timely Filed and properly served shall be forever barred and the Holder of such Claim shall not be entitled to participate in any Distribution under the Plan. The objection to any such Proof of Claim for damages allegedly arising from rejection of any Executory Contract shall be Filed no later than ninety (90) days after the later of (i) the date that such Proof of Claim is Filed, (ii) the Effective Date or (iii) such other date as the Bankruptcy Court may so order.

2.	**Asset Purchase Agreement**

Section 10.2 of the Plan provides that the Asset Purchase Agreement will not be deemed rejected and will continue to be binding on the Debtor, the Liquidating Trust and the Purchaser. Except as it relates to the Liquidating Trust continuing as the successor to the Debtor, the Asset Purchase Agreement shall not be modified or amended in any way by the Plan, the Liquidating Trust Agreement or the Confirmation Order.

3.	**Employment Contract with Chris Marques.**

Section 10.3 of the Plan provides that on March 17, 2010, the Bankruptcy Court approved (i) the amended and restated employment agreement (the "Marques Employment Agreement"), effective as of January 15, 2010, by and between Christian D. Marques and the Debtor and (ii) the amended and restated cost-sharing agreement (the "Marques Cost-Sharing Agreement" and collectively with the Marques Employment Agreement, the "Marques Agreements"), effective as of January 15, 2010, by and among Christian D. Marques, the Debtor and the Purchaser. The Marques Agreements were deemed to amend, modify and supersede all prior agreements relating to the employment and compensation of Christian D. Marques by the Debtor. The Marques Agreements shall not be deemed rejected and shall continue to be binding on the Debtor, the Liquidating Trust and the Purchaser. Except as it relates to the Liquidating Trust continuing as the successor to the Debtor, the Marques Agreements shall not be modified or amended in any way by the Plan, the Liquidating Trust Agreement or the Confirmation Order.

4.	**Insurance Contracts.**

All insurance contracts of the Debtor, to the extent transferable, have been transferred to Purchaser at or around the time of closing. All other insurance contracts that have not previously been transferred, assumed and assigned or rejected by the Debtor will be deemed rejected pursuant to section 365 of the Bankruptcy Code. Entry of the Confirmation Order shall

constitute approval, pursuant to section 365(a) of the Bankruptcy Code, of the rejection of executory contracts rejected pursuant to the Plan.

### 5. Office Equipment Lease.

All leases for office equipment of the Debtor, to the extent transferable, have been transferred to Purchaser at or around the time of closing. All other leases that have not previously been transferred, assumed and assigned or rejected by the Debtor will be deemed rejected pursuant to section 365 of the Bankruptcy Code. Entry of the Confirmation Order shall constitute approval, pursuant to section 365(a) of the Bankruptcy Code, of the rejection of executory contracts rejected pursuant to the Plan.

### 6. Conditions Precedent to Confirmation

Section 11.1 of the Plan provides that the following are conditions precedent to the Effective Date of the Plan, unless waived in writing by the Plan Proponents: (i) the Bankruptcy Court has entered the Confirmation Order, in form and substance satisfactory to the Plan Proponents, and such order has become a Final Order; (ii) no stay of the Confirmation Order is in effect and no order shall have been entered and shall remain in effect restraining the Debtor from consummating the Plan; and (iii) all documents necessary to implement the Plan, including, without limitation, the Plan Documents, shall have been executed in form and substance reasonably satisfactory to the Plan Proponents.

### 7. Conditions Precedent to Consummation

The Plan shall not become effective and operative unless and until the Effective Date occurs. In the event that one or more of the conditions specified in Section 11.2 of the Plan have not been waived pursuant to such section or have not occurred on or before 60 days after the Confirmation Date, (i) the Confirmation Order may, upon the request of the Plan Proponents, be vacated, (ii) no Distributions under the Plan shall be made, (iii) the Debtor and all Holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred and (iv) the Debtor's obligations with respect to Claims and Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor, the Committee, the Liquidating Trustee or any Person in any further proceedings involving the Debtor, the Estate or its property.

### 8. Settlement and Compromise of Estate Actions

Section 15.2 of the Plan provides that, from and after the Effective Date, the Liquidating Trustee shall have the exclusive right and authority, without notice to any party or further order of the Bankruptcy Court, to settle or compromise all Estate Actions enforced by the Liquidating Trustee after the Effective Date where (i) the original amount sought in such action is $10,000 or less, (ii) the original amount sought in such action is greater than $10,000 and less than $100,000 and the settlement amount is seventy percent (70%) or more of the original amount sought in such action and (iii) the original amount sought in such action is $100,000 or

more and the settlement amount is eighty percent (80%) or more of the original amount sought in such action. The Liquidating Trustee shall have the right and authority to settle or compromise any other Estate Actions upon three (3) Business Days' notice to the U.S. Trustee and the parties on the Special Notice List. Consistent with Section 15.9 of the Plan, the Plan Proponents and the Liquidating Trustee shall also have the authority to execute any documents or take any other action required to effectuate such settlements or compromises.

## G. Effects of Plan Confirmation

### 1. Satisfaction of Claims

Section 12.1 of the Plan provides that the treatment of and consideration to be received by Holders of Allowed Claims pursuant to the Plan will be in full satisfaction of such Holders' respective Claims against the Estate. Notwithstanding the foregoing, unless an Estate Action is expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or another Final Order of the Bankruptcy Court, all Estate Actions are expressly reserved for later adjudication and therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Estate Actions upon or after the confirmation or consummation of the Plan, the Debtor, prior to the Effective Date (and non-exclusively), and thereafter the Liquidating Trustee (exclusively) retain the right to enforce any and all present and future rights, claims or causes of action against any Person consistent with Section 12.7 of the Plan.

### 2. Binding Effect of Plan

The Plan shall be binding on and inure to the benefit of (and detriment to, as the case may be) the Debtor, the Estate, the Committee, the Liquidating Trustee, the Liquidating Trust, all Holders of Claims or Interests (whether or not they have accepted this Plan) and their respective personal representatives, successors and assigns.

### 3. Injunction

Except as expressly provided herein, at all times on and after the Effective Date, through and including the date of entry of a Final Order closing the Bankruptcy Case, all Persons that have held, currently hold or may hold a Claim or other debt or liability against or Interests in the Debtor or its Estate, are permanently enjoined from taking any of the following actions against or affecting the Debtor, the Estate, its property, the Liquidating Trust, the Trust Assets, the Liquidating Trustee, or the Committee, with respect to such Claims or Interests:

(i) commencing, conducting or continuing in any court other than the Bankruptcy Court in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affecting the Debtor, the Estate, its property, the Liquidating Trust, the Trust Assets, the Liquidating Trustee, or the Committee (including, without limitation, all suits, actions and proceedings that are pending as of the Effective Date);

(ii) enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the Estate, its property, the Liquidating Trust, the Trust Assets, the Liquidating Trustee, or the Committee;

(iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Lien, charge or encumbrance of any kind against the Debtor, the Estate, its property, the Liquidating Trust, the Trust Assets, or the Liquidating Trustee;

(iv) asserting any right of subrogation or recoupment of any kind, directly or indirectly against any obligation due the Debtor, the Estate, its property, the Liquidating Trust, the Trust Assets, or the Liquidating Trustee; and

(v) proceeding in any manner in any place, other than the Bankruptcy Court, whatsoever against Debtor, the Estate, its property, the Liquidating Trust, the Trust Assets, the Liquidating Trustee, or the Committee that does not conform to or comply with, or is inconsistent with, the provisions of this Plan;

provided, however, nothing in Section 12.3 of the Plan shall prohibit any Person from taking actions to enforce any rights or obligations under or in connection with its Claim(s) before the Bankruptcy Court, the terms of the Asset Purchase Agreement, this Plan, or the Confirmation Order in the Bankruptcy Court.[3]

## 4. Exculpation and Limitation of Liability

Any and all Claims, liabilities, causes of action, rights, damages, costs and obligations held by any party against the Exculpated Persons, whether known or unknown, matured or contingent, liquidated or unliquidated, existing, arising or accruing, whether or not yet due, in any manner, related to (i) the administration of the Bankruptcy Case, (ii) the formulation, negotiation, prosecution or implementation of the Plan, this Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement, pleading or document created or entered into in connection therewith or (iii) the pursuit of Estate Actions or any other act taken or omitted in connection with the Asset Purchase Agreement, the Plan, this Disclosure Statement or the Confirmation Order, shall be deemed fully waived, barred, released and discharged in all respects, except as to rights, obligations, duties, claims and responsibilities preserved, created or established by terms of the Plan; provided, however, that any Exculpated Person could incur liability as a result of any such act or omission to the extent that such act or omission constitutes fraud, gross negligence or willful misconduct or willful violation of federal

---

[3] In addition nothing contained in Section 12.3 of the Plan shall prohibit the Holder of a Disputed Claim from seeking to have the Bankruptcy Court resolve the Disputed Claim, or shall prohibit a Holder of a Claim from seeking relief in any court of competent jurisdiction in connection with any claim asserted against any non-Debtor.

or state securities laws or the Internal Revenue Code. Any Exculpated Person injured by any willful violation of the injunctions provided in the Plan shall recover from the willful violator actual damages (including costs and attorneys' fees) and, in appropriate circumstances, punitive damages.

**5.      Term of Injunctions and Stays**

Unless otherwise provided in the Plan or in another order of the Bankruptcy Court, all injunctions or stays provided for in the Bankruptcy Case pursuant to sections 105, 362 and 524 of the Bankruptcy Code, or otherwise, and in effect on the Confirmation Date shall remain in full force and effect until the later of (i) the entry of the Final Decree, or (ii) dissolution of the Debtor. However, nothing in this Section shall apply to the injunction provided for in Section 12.3 of the Plan.

**6.      Release of Liens**

Except as otherwise provided in the Plan or the Confirmation Order, any and all Liens, security interests, deeds of trust, pledges, guarantees, indemnities or mortgages against the property of the Debtor or the Estate will and will be deemed to be released, canceled, terminated, and nullified on the Effective Date.

**7.      Preservation of Estate Actions**

Except as provided in the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any claims, rights or Estate Actions that the Debtor may have under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, (i) any and all claims against any Person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim, and/or claim for setoff which seeks affirmative relief against the Debtor, its officers, directors, or representatives and (ii) the turnover of any property of the Debtor's Estate. Upon the Effective Date, the Liquidating Trustee shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such claims, rights and Estate Actions without Bankruptcy Court approval and in accordance with the terms of the Plan, and all proceeds of such actions shall be transferred to the Liquidating Trust. Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense which the Debtor had immediately prior to the Petition Date, against or with respect to any Claim left Unimpaired by the Plan.

**H.      Retention of Jurisdiction**

**1.      Claims and Actions**

The Bankruptcy Court shall retain jurisdiction over the Bankruptcy Case, including, without limitation, such jurisdiction as is necessary to ensure that the purposes and intent of the Plan are implemented. The Bankruptcy Court shall also expressly retain jurisdiction to hear and determine all Claims against the Debtor or the Liquidating Trustee.

## 2.    Retention of Additional Jurisdiction

Section 14.2 of the Plan provides that following the Effective Date, and notwithstanding the entry of the Confirmation Order, the Bankruptcy Court shall retain exclusive jurisdiction of the Bankruptcy Case and all matters arising under, arising out of, or related to, the Bankruptcy Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(i)    Hear and determine motions, applications, adversary proceedings, and contested matters pending, filed on, or commenced after the Effective Date, including proceedings with respect to the rights of the Liquidating Trust to recover property under sections 542, 543 or 553 of the Bankruptcy Code, or of the Liquidating Trust to bring any Estate Action, or to otherwise collect or recover on account of any claim or Estate Action that the Debtor may have or retain;

(ii)    Hear and determine objections (whether filed before, on or after the Effective Date) to, or requests for estimation of any Claim, and to enter any order requiring the Filing of Proof of Claim before a particular date;

(iii)    Adjudicate any and all disputes over the ownership of a Claim or Beneficial Interest;

(iv)    Determine the extent, validity and/or priority of any Lien asserted against property of the Debtor or its Estate;

(v)    Ensure that all payments due under the Plan and performance of the provisions of the Plan are accomplished as provided therein and resolve any issues relating to distributions to the Holders of Allowed Claims pursuant to the provisions of the Plan;

(vi)    Enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(vii)    Continue to enforce the automatic stay through the Effective Date;

(viii)    Issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any Person or Entity with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Code;

(ix)    Hear and determine matters concerning state, local and federal taxes including refunds or issues related to sections 346, 505 and 1146 of the Bankruptcy Code;

(x)    Issue orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(xi)    Construe and take any action to enforce the Plan and the Confirmation Order;

(xii)     Determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of the Plan or the Confirmation Order, and the indemnification and injunction provisions set forth in and contemplated by the Plan or the Confirmation Order, or any Entity's rights arising under or obligations incurred in connection therewith;

(xiii)     Hear and determine any applications to modify the Plan, to cure any defect or omission or to reconcile any inconsistency in the Plan, this Disclosure Statement or in any order of the Bankruptcy Court including, without limitation, the Confirmation Order;

(xiv)     Determine any other matters that may arise in connection with or relating to the Plan, this Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, this Disclosure Statement or the Confirmation Order, except as otherwise provided in the Plan;

(xv)     Hear and determine all applications for Professional Fee Claims required by the Plan;

(xvi)     Hear and determine any pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting therefrom;

(xvii)     Hear and determine other issues presented or arising under the Plan, including disputes among Holders of Claims or arising under agreements, documents or instruments executed in connection with the Plan;

(xviii)     Determine and resolve controversies related to the Liquidating Trust;

(xix)     Determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(xx)     Hear and determine any action concerning the recovery and liquidation of Trust Assets, wherever located, including without limitation, litigation to liquidate and recover Trust Assets that consist of, among other things, the Estate Actions, or other actions seeking relief of any sort with respect to issues relating to or affecting Trust Assets;

(xxi)     Enter a Final Decree closing the Bankruptcy Case;

(xxii)     Hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code; and

(xxiii)     Hear and determine any question or questions regarding which the Liquidating Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Liquidating Trustee with respect to the Liquidating Trust, the Beneficiaries, or the Debtor, including the administration and distribution of the Trust Assets.

**CLAIMHOLDERS ARE URGED TO READ THE PLAN IN FULL SO THAT THEY
MAY MAKE AN INFORMED JUDGMENT CONCERNING THE PLAN.**

**ARTICLE VI
CONFIRMATION AND CONSUMMATION PROCEDURE**

**A.      Confirmation Hearing**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after appropriate notice, to hold a hearing on confirmation of a plan of reorganization or liquidation. The hearing may be adjourned or continued from time to time by the Plan Proponents or the Bankruptcy Court without further notice except for an announcement of the adjourned or continued date made at the hearing on confirmation or any subsequent adjourned or continued hearing on confirmation.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of a chapter 11 plan. Any objection to confirmation of the Plan must be in writing, must conform to the Bankruptcy Rules, must set forth the name of the objector, the nature and amount of Claims or Interests held or asserted by the objector against the particular Debtor, the basis for the objection and the specific grounds therefor, and must be Filed with the Bankruptcy Court, with a copy to chambers, together with proof of service thereof, and served upon (i) O'Melveny & Myers LLP, counsel for the Debtor, 7 Times Square, New York, NY 10036, Attn.:   Gerald C. Bender, Esq.; (ii) Otterbourg, Steindler, Houston & Rosen, P.C., counsel for the Official Committee of Unsecured Creditors, 230 Park Avenue, New York, NY 10169, Attn.:   William M. Silverman, Esq. and Melanie L. Cyganowski, Esq.; and (iii) The Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, NY 10004, Attn.:  Elisabetta Gasparini, Paul K. Schwartzberg.

Rule 9014 of the Federal Rules of Bankruptcy Procedure governs objections to confirmation of the Plan.  UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

**B.      Requirements of Section 1129(a) of Bankruptcy Code**

The Bankruptcy Court will confirm the Plan only if it finds that all of the applicable requirements enumerated in section 1129(a) of the Bankruptcy Code have been met or, if all of the requirements of section 1129(a) other than the requirements of section 1129(a)(8) have been met (i.e., that all impaired classes have accepted the plan), that all of the applicable requirements enumerated in section 1129(b) of the Bankruptcy Code have been met.

Confirmation of a plan under section 1129(a) of the Bankruptcy Code requires, among other things, that:

- the plan complies with the applicable provisions of the Bankruptcy Code;

- the proponent of the plan has complied with the applicable provisions of the Bankruptcy Code;

- the plan has been proposed in good faith and is not by any means forbidden by law;

- any plan payment made or to be made by the proponent under the plan for services or for costs and expenses in, or in connection with, the chapter 11 case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable;

- with respect to each impaired class of claims or interests, either each holder of a claim or interest of such class has accepted the plan, or will receive or retain under the plan on account of such claim or interest, property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated on such date under chapter 7 of the Bankruptcy Code;

- each class of claims or interests has either accepted the plan or is not impaired under the plan;

- except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that allowed administrative expenses and priority claims will be paid in full on the effective date;

- if a class of claims is impaired, at least one (1) impaired class of claims has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim in such class; and

- confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

Section 4.4 of the Plan provides that Class 4 is not receiving any Distribution under the Plan and is deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, as to such Class and any other Class that votes to reject the Plan, the Plan Proponents are seeking confirmation of the Plan in accordance with sections 1129(a) and (b) of the Bankruptcy Code either under the terms provided in the Plan or upon such terms as may exist if the Plan is modified in accordance with section 1127(d) of the Bankruptcy Code.

Subject to satisfying the standard for any potential "cram down" of Classes deemed to reject the Plan, the Plan Proponents believe that:

- the Plan satisfies all of the statutory requirements of chapter 11 of the Bankruptcy Code;

- the Debtor has complied or will have complied with all of the requirements of chapter 11 of the Bankruptcy Code; and

- the Plan has been proposed in good faith.

Set forth below is a summary of the relevant statutory confirmation requirements.

## 1.     Best Interests Test

In order to confirm the Plan, the Bankruptcy Court must, pursuant to section 1129(a)(7) of the Bankruptcy Code, independently determine that the Plan is in the best interests of each Holder of a Claim or Interest in any Impaired Class who has not voted to accept the Plan. This is often called the "best interests of claimholders" test. Accordingly, if an Impaired Class does not unanimously accept the Plan, the best interests test requires the Bankruptcy Court to find that the Plan provides to each member of such Impaired Class a recovery on account of the Class member's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the Distribution that each such member would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

The Bankruptcy Case has proceeded as a liquidating chapter 11 case since the Petition Date. As of the date of this Disclosure Statement, the Plan Proponents believe that more funds are likely to exist if the case continues in chapter 11 rather than if the case is converted to chapter 7 for completion. Insufficient funds exist and no prospect of sufficient additional funds exist to allow for any payment to Holders of Interest regardless of whether the case is completed under chapter 11 or chapter 7 of the Bankruptcy Code.

The only issue under the best interest of claimholders test is the value of Distributions available to Holders if the Plan is confirmed compared to the value of Distributions available to Holders if the case is converted to chapter 7. As more fully set forth in the liquidation analysis attached hereto as <u>Exhibit B</u>, the Plan Proponents believe that larger Distributions will be available to Holders under the Plan than under chapter 7 and, therefore, that the Plan meets the best interest of claimholders test. Conversion of the Bankruptcy Case to chapter 7 of the Bankruptcy Code would replace the Liquidating Trustee with a chapter 7 trustee. As a consequence, the liquidation and completion of this case would be substantially disrupted. Disruption would occur because a chapter 7 trustee would be unfamiliar with the case, as would the chapter 7 trustee's counsel. A chapter 7 trustee may be required to employ new counsel that might be unfamiliar with the issues requiring resolution in the estate. The Holders would bear the cost of educating the chapter 7 trustee, resulting in delays and reduced Distributions. Furthermore, all fees of, and expenses incurred by, the chapter 7 trustee and its professionals would have priority over all Administrative Expense Claims and Unsecured Claims previously incurred in this Bankruptcy Case under section 726(b) of the Bankruptcy Code.

## 2.     Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation should not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan. Under the terms of the Plan, the Allowed Claims potentially being paid in Cash are the Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims. The Debtor presently estimates that the total amount of such payments will be less than $_____ and it has sufficient funds to cover these payments as and when they become due, with the balance of funds being paid to Allowed Unsecured Claims.

The Plan clearly complies with the feasibility requirement because (i) the Debtor has sufficient cash or will have sufficient cash to satisfy its Plan payment obligations and (ii) all of the Debtor's remaining assets are being distributed to Holders and therefore the company will be dissolved pursuant to the Plan. Accordingly, the Estate will no longer exist to be subject to future reorganization or liquidation.

### 3. Acceptance by Impaired Classes

By this Disclosure Statement, the Plan Proponents are seeking the affirmative vote of each Impaired Class of Claims under the Plan that is proposed to receive a Distribution under the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, a class that is not "impaired" under a plan will be conclusively presumed to have accepted such plan; solicitation of acceptances with respect to any such class is not required. Pursuant to section 1126(g) of the Bankruptcy Code, a class of claims or interests that does not receive or retain any property under a plan of liquidation is deemed not to have accepted the plan, although members of that class are permitted to consent, or waive objections, to its confirmation.

Pursuant to section 1124 of the Bankruptcy Code, a class is "impaired" unless a plan (a) leaves unaltered the legal, equitable and contractual rights to which the claim or interest entitles the holder thereof, or (b) (i) cures any default (other than defaults resulting from the breach of an insolvency or financial condition provision), (ii) reinstates the maturity of such claim or interest, (iii) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on any contractual provision or applicable law entitling such holder to demand or receive accelerated payments after the occurrence of a default, and (iv) does not otherwise alter the legal, equitable or contractual rights to which the holder of such claim or interest is entitled.

Pursuant to section 1126(c) of the Bankruptcy Code, a class of impaired claims has accepted a plan of liquidation when such plan has been accepted by holders (other than an entity designated under section 1126(e) of the Bankruptcy Code) of at least two thirds (2/3) in dollar amount and more than one half (1/2) in number of the allowed claims of that class, which actually voted to accept or reject the plan. A class of interests has accepted a plan if the plan has been accepted by holders of interests (other than any entity designated under section 1126(e) of the Bankruptcy Code) that hold at least two thirds in amount of the allowed interests of such class held by interest holders (other than any entity designated under section 1126(e) of the Bankruptcy Code) that have actually voted to accept or reject the plan. Section 1126(e) of the Bankruptcy Code allows the Bankruptcy Court to designate the votes of any party that did not vote in good faith or whose vote was not solicited or procured in good faith or in accordance with the Bankruptcy Code. Holders of claims or interests who fail to vote are not counted as either accepting or rejecting the plan.

### 4. Confirmation Without Acceptance by All Impaired Classes

Because Class 4 (Interests) is deemed not to have accepted the Plan, the Plan Proponents are seeking confirmation of the Plan as to such Class, and as to any other Class that votes to reject the Plan, pursuant to section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code provides that the Bankruptcy Court may still confirm a plan at the request

of a debtor if, as to each impaired class that has not accepted the plan, the plan "does not discriminate unfairly" and is "fair and equitable."

Section 1129(b)(2)(A) of the Bankruptcy Code provides that with respect to a non-accepting class of impaired secured claims, "fair and equitable" includes the requirement that the plan provides (a) that each holder of a claim in such class (i) retains the liens securing its claim to the extent of the allowed amount of such claim and (ii) receives deferred cash payments at least equal to the allowed amount of its claim with a present value as of the effective date of such plan at least equal to the value of such creditor's interest in the debtor's interest in the property securing the creditor's claim, (b) for the sale, subject to section 363(k) of the Bankruptcy Code, of the property securing the creditor's claim, free and clear of the creditor's liens, with those liens attaching to the proceeds of the sale, and such liens on the proceeds will be treated in accordance with clauses (a) or (c) thereof, or (c) for the realization by the creditor of the "indubitable equivalent" of its claim.

Section 1129(b)(2)(B) of the Bankruptcy Code provides that with respect to a non-accepting class of impaired unsecured claims, "fair and equitable" includes the requirement that (a) the plan provide that each holder of a claim in such class receives or retains property of a value as of the effective date equal to the allowed amount of its claim, or (b) the holders of claims or interests in classes that are junior to the claims of the dissenting class will not receive or retain any property under the plan on account of such junior claim or interest.

Section 1129(b)(2)(C) of the Bankruptcy Code provides that with respect to a non-accepting class of impaired interests, "fair and equitable" includes the requirement that (a) the plan provides that each holder of an impaired interest in such class receives or retains property of a value as of the effective date equal to the greatest of (i) the allowed amount of any fixed liquidation preference to which such holder is entitled, (ii) any fixed redemption price to which such holder is entitled, and (iii) the value of such interest, or (b) the holders of all interests that are junior to the interests of the dissenting class will not receive or retain any property under the plan on account of such junior interest.

The Plan Proponents believe that the Plan does not discriminate unfairly against, and is fair and equitable as to, each Impaired Class under the Plan.

## C.    Classification of Claims and Interests

The Plan Proponents believe that the Plan meets the classification requirements of the Bankruptcy Code.

## D.    Consummation

The Plan will be consummated on the Effective Date.  The Effective Date will occur on a Business Day selected by the Plan Proponents on or after the Confirmation Date, on which the conditions precedent to the effectiveness of the Plan, as set forth in the Plan, have been satisfied or waived pursuant to the Plan.

The Plan is to be implemented pursuant to its terms and consistent with the provisions of the Bankruptcy Code.

# ARTICLE VII
## ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

If the Plan is not confirmed or consummated, the alternatives include:

## A. Liquidation Under Chapter 7

The Debtor could be liquidated under chapter 7 of the Bankruptcy Code. A discussion of the effect a chapter 7 liquidation would have on the recoveries of the Holders of Claims is set forth in Article VI.B.1 of this Disclosure Statement.

## B. Alternative Plan(s) of Liquidation

The Plan Proponents believe that not only does the Plan fairly adjust the rights of various Classes of Claims and enable the Holders of Claims to maximize their returns, but also that rejection of the Plan in favor of some alternative method of reconciling the Claims will require, at the very least, an extensive and time consuming process (including the possibility of protracted and costly litigation) and will not result in a better recovery for any Class.

THE PLAN PROPONENTS BELIEVE THAT CONFIRMATION OF THE PLAN IS PREFERABLE TO ANY ALTERNATIVE BECAUSE THE PLAN MAXIMIZES THE AMOUNT OF DISTRIBUTIONS TO ALL HOLDERS OF CLAIMS AND ANY ALTERNATIVE TO CONFIRMATION OF THE PLAN WILL RESULT IN SUBSTANTIAL COSTS AND DELAYS IN THE DISTRIBUTION OF ANY RECOVERIES. THEREFORE, THE PLAN PROPONENTS RECOMMEND THAT ALL HOLDERS OF IMPAIRED CLASSES ENTITLED TO VOTE ON THE PLAN VOTE TO ACCEPT THE PLAN.

## C. Dismissal of the Debtor's Chapter 11 Case

Dismissal of the Debtor's Bankruptcy Case would have the effect of restoring (or attempting to restore) all parties to the status quo ante. Upon dismissal of the Debtor's Bankruptcy Case, the Debtor would lose the protection of the Bankruptcy Code, thereby requiring, at the very least, an extensive and time-consuming process of negotiation with the Creditors of the Debtor. Dismissal will also permit unpaid unsecured Creditors to obtain and enforce judgments against the Debtor. Therefore, the Debtor believes that dismissal of the Debtor's Bankruptcy Case under chapter 11 of the Bankruptcy Code is not a viable alternative to the Plan.

# ARTICLE VIII
## SUMMARY OF VOTING PROCEDURES

This Disclosure Statement, including all Exhibits hereto, together with the related materials included herewith or to be provided, are being furnished to the Holders of Claims in Class 3, the only Class entitled to vote on the Plan. Notice of Filing the Plan and Disclosure Statement will be provided to Holders of Claims in Class 3 and known Holders of Administrative Expense Claims, Priority Tax Claims and Priority Non-Tax Claims.

All votes to accept or reject the Plan must be cast by using the Ballot enclosed with this Disclosure Statement.  No other votes will be counted.  Consistent with the provisions of Bankruptcy Rule 3018, the Debtor has fixed April 29, 2010 at 5:00 p.m. (Eastern time) as the Voting Record Date, the date for the determination of Holders of record of Claims entitled to receive a copy of this Disclosure Statement and the related materials and to vote to accept or reject the Plan.  Ballots must be <u>received</u> by the Debtor's Claims and Noticing Agent by the Voting Deadline, which is no later than 5:00 p.m. (Eastern time) on [_____ ___], 2010, unless the Debtor, at any time, in its sole discretion, extends the date by oral or written notice.

Ballots previously delivered may be withdrawn or revoked at any time prior to the Voting Deadline by the beneficial owner on the Voting Record Date who completed the original Ballot.  Only the person or nominee who submits a Ballot can withdraw or revoke that Ballot.  A Ballot may be revoked or withdrawn either by submitting a superseding Ballot or by providing written notice to counsel for the Debtor.

## ARTICLE IX
## CERTAIN FACTORS TO BE CONSIDERED

### A.  Certain Bankruptcy Considerations

#### 1.  General

Although the Plan is designed to satisfy certain Claims against the Estate in full, and thereby, to minimize the length of this bankruptcy proceeding, it is impossible to predict with certainty the amount of time that the Debtor may spend in bankruptcy or to assure that the Plan will be confirmed.

#### 2.  Failure to Receive Requisite Acceptances

If the Requisite Acceptances are received, the Plan Proponents intend to seek, as promptly thereafter as practicable, confirmation of the Plan.  If the Requisite Acceptances are not received, the Debtor may seek to accomplish an alternative restructuring of its obligations to Creditors.  There can be no assurance that the terms of any such alternative arrangement or plan would be similar to or as favorable to the Debtor's Creditors as those proposed in the Plan.

#### 3.  Failure to Confirm the Plan

Even if the Requisite Acceptances are received, the Bankruptcy Court, which, as a court of equity may exercise substantial discretion, may choose not to confirm the Plan.  Section 1129 of the Bankruptcy Code requires, among other things, a showing that confirmation of the Plan will not be followed by liquidation or the need for further financial reorganization of the Debtor, (unless such liquidation is contemplated) and that the value of distributions to dissenting Holders of Claims may not be less than the value such Holders would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.  Although the Plan Proponents believe that the Plan meets such test, there can be no assurance that the Bankruptcy Code will reach the same conclusion.

4.      **Risk of Non-Occurrence of the Effective Date**

Although the Plan Proponents believe that the Effective Date will occur soon after the Confirmation Date, there can be no assurance as to such timing.

5.      **Debtor could Withdraw the Plan**

Under the Plan, the Plan Proponents could withdraw the Plan at any time prior to substantial consummation, as defined in section 1101(2) of the Bankruptcy Code, of the Plan.  If the Plan is withdrawn or if the Confirmation Date does not occur, the Plan shall be null and void and have no force and effect.

6.      **Conversion into a Chapter 7 Case**

If a liquidating plan cannot be confirmed, or if the Bankruptcy Court otherwise finds that it would be in the best interest of Creditors, the chapter 11 case may be converted to a case under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed or elected to liquidate the Debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code.  A discussion of the effects that a chapter 7 liquidation would have on the recoveries of Holders of Claims and Interests and a liquidation analysis are set forth in Article VI.B.1 herein.

**B.      Risk Factors**

1.      **Allowed Claims May Exceed Estimates**

The projected distributions set forth in this Disclosure Statement are based upon the Debtor's good faith estimate of the amount of the expenses that will be incurred and the total amount of Claims that will ultimately be Allowed.  The actual amount of such expenses could be greater than expected for a variety of reasons, including greater than anticipated administrative and litigation costs associated with resolving Disputed Claims.  Additionally, the actual amount of Allowed Claims in any Class could be greater than anticipated, which will impact the Distributions to be made to Holders of Claims and could prevent the Debtor from being able to satisfy the conditions precedent to the Effective Date, as set forth in Section 11.1 of the Plan.  In addition to the more significant Allowed Claims, or increased administration costs and expenses, any remaining assets of the Debtor, as yet unliquidated, may be liquidated in amounts less than is anticipated or estimated.

2.      **Plan May Not Be Accepted or Confirmed**

While the Plan Proponents believe the Plan is confirmable under the standards set forth in section 1129 of the Bankruptcy Code, there can be no guarantee that the Bankruptcy Court will agree.

**ARTICLE X**
**TAX IMPLICATIONS**

THE PLAN PROPONENTS ARE NOT OFFERING TAX ADVICE TO ANY CREDITOR OR INTEREST HOLDER AND THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSIDERED TO CONTAIN ANY SPECIFIC ADVICE OR INSTRUCTION CONSIDERING THE TAX TREATMENT OF ANY CLAIM OR INTEREST. EACH CREDITOR AND INTEREST HOLDER IS URGED TO CONSULT WITH ITS OWN LEGAL, ACCOUNTING OR OTHER ADVISOR CONCERNING THE TAX TREATMENT OF ITS CLAIM, INTEREST AND ANY DISTRIBUTION FROM OR ON BEHALF OF THE DEBTOR PURSUANT TO THE PLAN OR OTHERWISE.

## CONCLUSION AND RECOMMENDATION

The Plan Proponents believe that the confirmation and consummation of the Plan is preferable to all other alternatives.

THE PLAN PROPONENTS URGE ALL CLAIMHOLDERS TO <u>ACCEPT</u> THE PLAN BY RETURNING THEIR BALLOTS TO THE DEBTOR'S CLAIMS AND NOTICING AGENT SO THAT THEY WILL BE RECEIVED BY 5:00 P.M. (ET) ON _____ _____, 2010.

Dated: New York, NY
[ S l 2 a, 2010

By: _____
Name: Christian D. Marques
Title: Executive Vice President, Chief Financial Officer & Treasurer of Escada (USA) Inc.

*Debtor and Debtor-in-Possession*

NYI:1803892.8

Exhibit A – Joint Plan of Liquidation

Exhibit B – Debtor's Liquidation Analysis

Exhibit C – Liquidating Trust Agreement